ROBERT MESSIER, Plaintiff-Appellant, *v.* ASSOCIATION OF APARTMENT OWNERS OF MT. TERRACE, Defendant/Cross-Appellee, and KAISER-AETNA, Defendant/Appellee/Cross-Appellant, and JOHN DOES 1-10; JOHN DOE CORPORATIONS 1-10; and JOHN DOE PARTNERSHIPS 1-10, Defendants, and KAISER-AETNA, through its Successor in Interest, KACOR DEVELOPMENT COMPANY, Third-Party Plaintiff/Appellee/Cross-Appellant, *v.* DILLINGHAM CORPORATION, individually, and doing business as HAWAIIAN DREDGING & CONSTRUCTION COMPANY, Third-Party Defendant/Additional Third-Party Plaintiff/Appellee/Cross-Appellant/Cross-Appellee, *v.* DAVID G. STRINGER & ASSOCIATES, LTD.; HAWAII WELDING COMPANY, LTD.; and DAVID T. ISHIKAWA, Trustee for the Creditors and Shareholders of HAWAII WELDING COMPANY, LTD., Additional Third-Party Defendants

NO. 10855

(CIVIL NO. 78313)

JANUARY 20, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

526

OPINION OF THE COURT BY HEEN, J.

In this personal injury action based upon strict products liability and negligence, Plaintiff-Appellant Robert Messier (Messier) appeals from the judgments below in favor of Defendant/Third-Party Plaintiff/ Appellee/Cross-Appellant Kaiser-Aetna (Kaiser)[1] and Third-Party

---

[1]Although the complaint named Kaiser-Aetna, allegedly ·a California partnership registered to do business in Hawaii, as a defendant, the answer and subsequent pleadings

Defendant/Additional Third-Party Plaintiff/Appellee/Cross-Appellant/Cross-Appellee Dillingham Corporation (Dillingham), doing business as Hawaiian Dredging & Construction Co. Kaiser appeals from the dismissal of its third-party complaint against Dillingham, and both Kaiser and Dillingham appeal from the dismissal of their indemnity claims against Defendant/Cross-Appellee Association of Apartment Owners of Mt. Terrace (Association), an unincorporated association.

The questions raised in this appeal and our answers are as follows:

(1) Did the trial court err in granting Kaiser's motion to strike Messier's Amended Pretrial Statement and denying Messier's motion to add critical witnesses?   Yes.

(2) Did the trial court err in granting Kaiser's and Dillingham's motions for summary judgment?[2] The trial court correctly granted summary judgment as to Messier's products liability claim, but erred in doing so as to his negligence claim.

(3) Did the trial court err in dismissing Kaiser's third-party indemnity claim against Dillingham?   Yes.

(4) Did the trial court err in dismissing Kaiser's and Dillingham's indemnity claims against Association?   No.

FACTS

The Mt. Terrace condominium apartment building (hereafter the building) was developed in 1973 by Kaiser in the Maunalua Bay area of Honolulu. On or about December 8, 1981, Messier, an employee and general manager of Association, was allegedly working on the roof of the building during a rainstorm when a metal panel which had been attached to the roof became dislodged by the storm and struck and

were filed by KACOR Development Company as successor-in-interest to Kaiser-Aetna. We do not know KACOR Development Company's legal status. In the opinion we will continue to refer to Kaiser-Aetna as the defendant.

[2]As will be discussed later in the opinion, Dillingham had filed a motion to dismiss under Rule 12(b)(6), Hawaii Rules of Civil Procedure (HRCP) (1980). Dillingham's motion was treated by the trial court as a motion for summary judgment, Rule 12(b), HRCP, and will be reviewed as such.

injured him. Messier received worker's compensation benefits under Hawaii Revised Statutes (HRS) chapter 386 (1985).

Messier filed suit against Association and Kaiser alleging that "the building was in a dangerous and defective condition, namely a metal panel located on the roof was loose or otherwise inadequately secured[.]" The complaint charged Association was negligent in "failing to maintain and repair" the building and that Kaiser was negligent in "failing to adequately design and construct" the building. The complaint was dismissed as to Association on its motion asserting that Messier's claim against it was barred under HRS § 386-5.[3] Kaiser answered the complaint and cross-claimed against Association, alleging that Association's negligence was the cause of Messier's injuries. Kaiser also filed a third-party complaint for indemnity against Dillingham, Kaiser's general contractor for the building, alleging that Messier's injuries were caused by, *inter alia,* Dillingham's negligence. Dillingham answered Kaiser's third-party complaint and filed a cross-claim for indemnity against Kaiser and Association alleging that Messier's injuries were caused by their negligence.[4] Dillingham also filed third-party complaints against David G. Stringer & Assoc., Ltd. (Stringer), the architectural firm that designed the building, Hawaii Welding Co., Ltd. (Hawaii Welding), which allegedly installed the metal panel as Dillingham's subcontractor, and David T. Ishikawa, Hawaii Welding's trustee in dissolution.[5] Association's motion for summary judgment on Kaiser's

---

[3]Hawaii Revised Statutes § 386-5 (1985) provides:

Exclusiveness of right to compensation. The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury.

[4]After Messier identified Dillingham as a Doe Defendant and served it with a complaint and summons, Dillingham answered the complaint and in its capacity as a defendant filed an identical third-party complaint against Kaiser and Association.

[5]Stringer answered, counterclaimed, and filed a cross-claim against Kaiser, Association, and Hawaii Welding. Kaiser and Association answered Stringer's complaint and cross-claimed against it. Stringer's motion to dismiss all "cross-claims" against it was granted on July 17, 1985. That action has not been appealed. Stringer had also been identified by Messier as a Doe Defendant, but service was never made on it. Hawaii Welding and Ishikawa did not respond to Dillingham's third-party complaint.

and Dillingham's cross-claims was denied.

Trial was scheduled for June 17, 1985, and discovery was to be completed by May 17, 1985. By December 14, 1984, pretrial statements had been filed on behalf of Messier, Dillingham, Kaiser, and Association. On May 16, 1985, the eve of discovery cutoff and one month before trial, Messier filed a First Amended Pretrial Statement (Pretrial Statement) which identified for the first time a mechanical engineer, a structural engineer (hereafter collectively engineers), and an economist as his expert witnesses, and other witnesses whom Messier intended to call at trial.[6] The engineers were Messier's only experts on the issue of liability.

Asserting that Messier's late naming of the expert witnesses violated Rule 12(a)(2) of the Rules of the Circuit Court (RCC) (1984),[7] and was prejudicial, Kaiser moved to strike the Pretrial Statement or, in the alternative, to exclude the tardily named witnesses or continue the trial. Dillingham and Association joined in the motion. On May 23, 1985, Messier filed a motion to add critical witnesses under Rule 12(a)(15), RCC.[8] On June 28, 1985, Messier's motion was denied and Kaiser's

---

[6]On the previous day Messier had filed a settlement conference statement which named the same witnesses.

[7]Rule 12(a)(2), Rules of the Circuit Court (RCC) (1984), provides:

*Pretrial Statement.* No case shall be placed on the "Ready Calendar" unless a "Pretrial Statement" has been filed and served in accord with Rule 5 of the Hawaii Rules of Civil Procedure. The pretrial statement shall state that discovery by the party submitting the statement has been substantially completed, or there has been a reasonable time to complete substantial discovery, and the case is ready to be set for trial. It also shall contain the following information:

    (i)   A statement of the facts;

    (ii)  Admitted facts;

    (iii)  All claims for relief and all defenses advanced by the party submitting the pretrial statement and the type of evidence expected to be offered in support of each claim and defense;

    (iv)  The names, addresses, categories (i.e., lay, eye, investigative), and type (i.e., liability, damages) of all non-expert witnesses reasonably expected to be called by the party submitting the statement and a general statement concerning the nature of the testimony expected; and

    (v)  The field of expertise of each expert witness expected to testify and a general statement concerning the nature of the testimony expected.

[8]Rule 12(a)(15), RCC, provides:

*Addition of Critical Witness.* At any time after the time for the Final Naming of Witnesses, upon a showing of good cause and substantial need a party may move for the addition of a critical witness.

motion to strike the Pretrial Statement was granted. Messier's motion for reconsideration was denied by an order entered on July 25, 1985.

On June 17, 1985, the trial court orally ordered that all the defendants would be allowed to file dispositive motions on Messier's claims.[9] Consequently, on June 18, 1985, Kaiser filed a motion for summary judgment on Messier's claims, Dillingham filed a motion to dismiss "all claims" against it, and Association filed a "Motion to Dismiss Cross-Claims." After a hearing, the motions were granted.

Messier, Kaiser, and Dillingham timely appealed.[10] The appeals will be discussed *seriatim*.

MESSIER'S APPEAL

I.

The first question raised in Messier's appeal is whether the lower court abused its discretion in granting Kaiser's motion to strike Messier's Pretrial Statement and denying his motion to add critical witnesses. As noted above, both motions were based on Rule 12, RCC. Inasmuch as both motions involve the question whether Messier should have been allowed to present the witnesses' testimony at trial, they will be considered together.

Rule 12, RCC, deals with pretrial matters and establishes the posture of a case for trial. Sanctions imposed by the trial court under that rule are reviewable under the abuse of discretion standard. *See GLA, Inc. v. Spengler,* 1 Haw. App. 647, 623 P.2d 1283 (1981). The standard of review is whether the trial court's action clearly exceeded the bounds of reason or was in disregard of principles of law or practice. *Title Guaranty Escrow Services, Inc. v. Powley,* 2 Haw. App. 265, 630 P.2d 642 (1981).

Kaiser and Dillingham contend that the Pretrial Statement was an

---

[9]The occasion for the trial court's order was a hearing on a motion by Stringer to dismiss all claims against it.

[10]On August 7, 1986, we temporarily remanded this case to the trial court for lack of appellate jurisdiction because (1) there was no final judgment in favor of Kaiser and Dillingham; and (2) the claims against Hawaii Welding Co., Ltd. and David T. Ishikawa had not been disposed of and there was no Rule 54(b), HRCP, certification in the record. On remand all the appropriate judgments were entered *nunc pro tunc.*

attempt by Messier to bring in a new claim for strict products liability without amending his complaint. However, Messier's allegation in his complaint that the building was dangerous and defective, together with the assertion of a strict products liability claim in his original pretrial statement refutes that argument.

Kaiser and Dillingham further argue (1) that Messier had more than ample time to identify his witnesses; (2) that Kaiser and Dillingham were prejudiced by his tardiness because they did not have sufficient time to depose the witnesses or to find their own expert rebuttal witnesses; and (3) that Messier had not provided them with the witnesses' written statements as required by Rule 12(a)(2)(v), RCC. In our view, however, Messier's counsel's explanation for his tardiness constituted good cause under Rule 12(a)(15) and the trial court's action exceeded the bounds of reason.

We note, first, that in his original pretrial statement Messier indicated that other witnesses would be identified later as they were discovered. There was no attempt by Messier to mislead Kaiser and Dillingham into believing that Messier would not bring in other witnesses.

Messier's counsel explained in his affidavit that when he learned that his economist witness would not be available for the trial he was compelled to find another economist. Additionally, he stated that he had been planning to use an architect as his expert to show liability. However, after Stringer was joined as a third-party defendant and Messier had deposed David G. Stringer, Messier felt compelled to switch to the engineers for expert testimony. Those decisions might have been made at an earlier date. However, on the entire record, we are convinced that Messier's counsel's explanation indicated good cause for adding the witnesses.

Additionally, we are not convinced that Kaiser or Dillingham suffered undue prejudice. They were doubtlessly inconvenienced, since trial was close at hand; however, they were able to depose the expert witnesses in short order, and although they may have anticipated some difficulty obtaining their own witnesses for rebuttal, that does not appear to have been an insurmountable problem.

Finally, we note that Kaiser's motion requested the alternative remedy of continuing the trial date. We do not believe that any of the parties would have been prejudiced by a continuance. Previously, on

May 1, 1985, Stringer had filed a motion for continuance which Kaiser joined and Dillingham did not oppose. On June 12, 1985, Messier also filed a motion for continuance to allow Judge Philip T. Chun, who had orally granted Kaiser's motion to strike Messier's Pretrial Statement and denied Messier's motion to add critical witnesses, and was on vacation, to hear Messier's motion for reconsideration of that order.[11]

Standing alone the sanction may not appear harsh. However, in view of the ensuing judgments against Messier, which were based in part upon the argument that Messier would not be able to prove his case without expert witnesses, it took on Draconian dimensions. The trial court should more properly have allowed Messier to add his witnesses and continued the trial to allow the other parties to fully prepare. *See Bagalay v. Lahaina Restoration Foundation,* 60 Haw. 125, 588 P.2d 416 (1978).

We turn now to Messier's arguments on the summary judgments in favor of Kaiser and Dillingham.

## II.

### A.

Messier argues that the trial court abused its discretion in allowing Kaiser and Dillingham[12] to file their motions for summary judgment on the very eve of trial. He asserts that the motions violated Rule 7(f), RCC (1984), which prohibits the filing of motions affecting substantive issues more than 60 days after the filing of a responsive pretrial statement. The argument is without merit.

Rule 56, HRCP (1980), allows a motion for summary judgment to be

---

[11]Messier had attempted to file his motion for reconsideration prior to June 12, 1985, but was not allowed to do so because no written order had been entered. The written order was entered on June 28, 1985, and Messier filed his motion for reconsideration on July 2, 1985.

[12]Dillingham's motion was to dismiss Messier's complaint for failure to state a claim, and cited Rule 12(b)(6), HRCP. Dillingham's reference to the fact that Messier would not be able to produce his expert witnesses put matters before the court that were outside the pleadings. The Rule 12(b)(6) motion became one for summary judgment under Rule 56. *Rosa v. CWJ Contractors, Ltd.,* 4 Haw. App. 210, 664 P.2d 745 (1983).

filed at any time. The conflict between Rule 56, HRCP, and Rule 7, RCC, must be resolved in favor of Rule 56. Rule 32, RCC (1971).

Although Messier concedes that Dillingham's motion was really one for summary judgment and that such motions may be filed at any time, he contends that the motions were improper because they violated Rule 56's requirement that such motions be served at least ten days before the date of the hearing on the motion. We are not persuaded by the argument, since Messier's motion for time to respond was granted.

### B.

The standard of review of the summary judgments in this case is whether there are any genuine issues of material fact in the record and whether Kaiser and Dillingham were entitled to judgment as a matter of law. *Towse v. State*, 64 Haw. 624, 647 P.2d 696 (1982); *Namauu v. City and County*, 62 Haw. 358, 614 P.2d 943 (1980). The facts in the record and the inferences to be drawn from them are viewed in the light most favorable to Messier. *Carrington v. Sears, Roebuck & Co.*, 5 Haw. App. 194, 683 P.2d 1220 (1984).

Messier essentially asserts two claims: strict products liability and negligence. We will discuss the summary judgment motions in relation to the strict products liability claim first, and then in relation to the negligence claim.

### 1.

The thrust of Messier's complaint is that the building was a "defective and dangerous product because the metal panel was loose or inadequately fastened" to the building's roof and, therefore, Kaiser and Dillingham are strictly liable for his injuries.

Kaiser and Dillingham argue that the building is not a product and they cannot, therefore, be held strictly liable for Messier's injuries. We agree.

In *Kaneko v. Hilo Coast Processing*, 65 Haw. 447, 654 P.2d 343 (1982), the supreme court declined to define "product" for the purposes of strict products liability, and noted that a product must be determined on a case-by-case basis guided by case law, public policy, the comments

to the Restatement (Second) of Torts,[13] and the Model Uniform Product Liability Act,[14] published by the United States Department of Commerce. 44 Fed. Reg. 62714 (1979).

Pointing out that the authorities are divided on the question whether a building is a product within the meaning of strict products liability, the *Kaneko* court held that:

> a prefabricated building that must be assembled is a product where the seller-manufacturer may be found strictly liable for injuries caused by a defective component part. We agree with the conclusions of the *Lantis* court that strict liability applies to "assembly-type situations."

---

[13]Comment d to the Restatement (Second) of Torts provides examples of products to which the doctrine would apply. Comment d states:

> The rule stated in this Section is not limited to the sale of food for human consumption, or other products for intimate bodily use, although it will obviously include them. It extends to any product sold in the condition, or substantially the same condition, in which it is expected to reach the ultimate user or consumer. Thus the rule stated applies to an automobile, a tire, an airplane, a grinding wheel, a water heater, a gas stove, a power tool, a riveting machine, a chair and an insecticide. It applies also to products which, if they are defective, may be expected to and do cause only "physical harm" in the form of damage to the user's land or chattels, as in the case of animal food or a herbicide.

[14]In discussing the model act, the supreme court stated in *Kaneko:*

> Another source of guidance can be found in the Model Uniform Product Liability Act published by the United States Department of Commerce. 44 Fed. Reg. 62714 (1979). Although this act does not have the force of law, its analysis can help shed light in our inquiry. Section 102(C) of the Act defines product as follows at 62717:

> > "Product" means any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce. Human tissue and organs, including human blood and its components, are excluded from this term.

> The analysis to this section provides an understanding of the act and it states in pertinent part at 62719:

> > "Product" means property which, as a component part or an assembled whole, is movable, and possesses intrinsic value. Therefore, included are all goods, wares, merchandise, and their components, as well as articles and commodities capable of delivery for introduction into trade or commerce.

> > \* \* \*

> > In a specific case, the particular product with which this Act is concerned is the "relevant product" which actually gave rise to the product liability claim. The "relevant product" may be the product as a whole or the particular component part or parts which gave rise to the product liability claim.

*Kaneko v. Hilo Coast Processing*, 65 Haw. at 454-455, 654 P.2d at 348-349 (footnote omitted).

*Id.,* 65 Haw. at 457, 654 P.2d at 350. The supreme court in *Kaneko* stated that holding the prefabricated building to be a product would reaffirm the policy considerations underlying the strict products liability rule. Maximum protection would be afforded to persons injured by defective products; the burden of distributing the risk would be placed on the seller-manufacturer as a cost of doing business; and the seller-manufacturer would have an incentive to guard against such defects happening in the future.

Another facet of the question of what is a product is represented by *Bidar v. AMFAC, Inc.,* 66 Haw. 547, 669 P.2d 154 (1983). In *Bidar,* the plaintiff was injured when the towel bar in her hotel room's bathroom tore loose from the wall as she attempted to use it to pull herself up from the toilet. The supreme court declined to extend its holding in *Kaneko,* stating that "an identified component of a prefabricated building can hardly be likened to 'a portion of the leased or rented premises ... [that] prove[s] defective.' We perceive no good reason here to lend a more expansive meaning to 'product' than we did in *Kaneko*[.]" *Bidar,* 66 Haw. at 556-557, 669 P.2d at 161. We, likewise, in the circumstances of this case, decline to hold that the building is a product.

The gravamen of Messier's complaint is that the metal panel was either inadequately attached to the building or was improperly maintained or repaired. Those allegations are not sufficient in our view to establish strict liability for injuries resulting from a defective building and do not warrant our holding that the building is a product within the rule of strict products liability.[15]

The policy considerations that form the basis for the strict products liability rule do not compel its application in the instant case. Withholding the rule will not measurably depreciate Messier's chances of obtaining compensation for his injuries. He does not face the kind of difficulty in proving the negligence of either Kaiser or Dillingham, or both, in the construction of the building as is faced by plaintiffs in other cases where the doctrine of strict products liability has been applied.

We turn now to the summary judgments on Messier's negligence claim.

---

[15]Messier does not assert that the panel was a product, and we do not rule on that question.

2.

a.

In discussing Kaiser's and Dillingham's motions as they relate to negligence, we start with the proposition that questions of negligence are not ordinarily susceptible to summary judgment. *De Los Santos v. State,* 65 Haw. 608, 655 P.2d 869 (1982); *McKeague v. Talbert,* 3 Haw. App. 646, 658 P.2d 898 (1983). Additionally, if Dillingham or Stringer were negligent then Kaiser's liability for their negligence depends upon whether they were truly independent contractors, as Kaiser argues, or whether Kaiser exercised such control over their performance of their contracts with it that they were its agents or employees. *See Taira v. Oahu Sugar Co., Ltd.,* 1 Haw. App.208, 616 P.2d 1026 (1980). We also note that Dillingham's argument that Messier could not prove negligence without expert witnesses has been disposed of by our ruling that the trial court erred in denying Messier's motion to add critical witnesses.

b.

Kaiser asserts that it cannot be held liable for the negligence of either Dillingham or Stringer, because they were independent contractors. Our view of the record convinces us that there is a genuine issue of material fact as to that question.

Kaiser produced as exhibits its construction contract with Dillingham and its architectural agreement with Stringer, which, respectively, placed general responsibility for the completed building on Dillingham and Stringer. It also introduced the depositions of Daniel Buckingham, its employee on the construction project, and of David G. Stringer.[16] Kaiser's evidence supports its argument that Stringer and Dillingham were negligent in designing and constructing the building, and that Kaiser did not exercise such control over the performance of

---

[16]Buckingham's and David G. Stringer's depositions were taken in another proceeding: *Association of Apartment Owners of Mt. Terrace Condominium v. Windward Properties, Inc.,* Civil No. 52425, First Circuit Court.

either Stringer or Dillingham as to render Kaiser liable for their negligence.

Messier produced the depositions of David G. Stringer and Ronald W. Anderson (Anderson), Dillingham's employee on the project, which were taken in this case. Stringer's testimony indicated that the metal panels were required by Kaiser as part of the building's design and that the design was approved by Kaiser. Anderson's deposition indicates that Kaiser had one or more of its employees on the job site daily overseeing the progress of the construction. Messier's evidence is enough to raise a genuine issue of material fact as to the extent of control that Kaiser had over the design of the panels and the performance of the contract.

Messier's evidence also included correspondence relating to a number of construction defects encountered after the building was completed and occupied which indicated that the metal panels were rusting. A letter from Kaiser to First Hawaiian Bank regarding that problem indicates that Kaiser undertook to have the rusting remedied. Viewed most favorably to Messier, the evidence raises a genuine issue of fact as to whether Kaiser was negligent in not adequately repairing the metal panels when it undertook to remedy the rust situation and in not foreseeing at that time that the metal panels could come loose and cause injury.

The question of Kaiser's liability for its own negligence or for that of Dillingham or Stringer, or both, should have been preserved for trial. The trial court erred in granting both Kaiser's motion and Dillingham's motion.

## KAISER'S APPEAL

On June 18, 1985, Dillingham filed a motion to dismiss "all claims" against it. The order appealed by Kaiser merely granted the motion but did not specifically state that "all claims" were dismissed. Construing the order as having done so, Kaiser argues that if the trial court is reversed on Messier's appeal, the dismissal of its cross-claim against Kaiser should be reversed also. We agree.

We construe the order to be a dismissal of Kaiser's claim against Dillingham on the grounds that it was moot as a result of the judgment against Messier. Since the trial court erred in dismissing Messier's negligence claim against Dillingham, it follows that it was error to

dismiss Kaiser's indemnity claim.

## KAISER'S AND DILLINGHAM'S JOINT APPEAL

The dispositive issue in Kaiser's and Dillingham's appeal from the order granting Association's motion to dismiss their cross-claims is whether our Worker's Compensation Law, HRS chapter 386, relieves Association of any legal duty it might otherwise have to indemnify Kaiser and Dillingham for any liability they may have for Messier's injuries.[17] We answer yes, and affirm the order of dismissal.

HRS chapter 386 requires employers to compensate their employees for job-related injuries regardless of fault. *Dependents of Fred Crawford, Deceased v. Financial Plaza Contractors,* 64 Haw. 415, 419, 643 P.2d 48, 51 (1982). HRS § 386-5 provides that the statutory compensation is the employer's exclusive liability for work-related injuries, and that the statutory obligation of the employer is exclusive of any claim against it "on account" of an eligible injury.[18]

In *Kamali v. Hawaiian Electric Co.,* 54 Haw. 153, 504 P.2d 861 (1972), the Hawaii Supreme Court held that "the exclusive liability provision precludes only those actions which arise 'on account' of the employee's injury[,]" and that "[a] third party claim for indemnity is not based on the employee's injury but is for reimbursement based upon contract or some other independent duty existing between indemnitor and indemnitee." *Id.* 54 Haw. at 159, 504 P.2d at 865. *Kamali's* holding is still good law. *See Espaniola v. Cawdrey Mars Joint Venture,* 68 Haw. ___, 707 P.2d 365 (1985).

---

[17]Kaiser and Dillingham argue that Association's motion was improper as a bald attempt to have the court reconsider its previous denial of a motion for summary judgment by Association. They argue that it was really a motion for reconsideration under Rule 60(b), HRCP, and did not establish any of the grounds for reconsideration under that rule. The argument is without merit.

Although we do not condone repetitive attempts to have a court reconsider its rulings, particularly where no new grounds are stated, we see nothing inherently wrong with a party attempting to persuade a court to change its mind. *See Bidar v. Amfac, Inc.,* 66 Haw. 547, 669 P.2d 154 (1983). Moreover, in our view, in spite of Messier's citation to Rule 60 in its motion, this was not a Rule 60(b) motion. Rather, we consider it as a Rule 56 motion for summary judgment, which can be brought by a defendant at any time.

[18]*See* footnote 3, *supra.*

Kaiser and Dillingham contend that Association's indemnity obligation is based upon Association's breach of an independent duty owed to them. Dillingham states that Association's duty "was to properly maintain and repair the Mt. Terrace condominium building and to adequately warn its employees of a known, potentially dangerous condition." However, the duty argued for by Dillingham is not owed to Kaiser and Dillingham, and cannot be relied upon by them.

The question of duty is a question of law to be determined by reference to the body of statutes, rules, principles, and precedents which make up the law. *Hayes v. Nagata,* 68 Haw. ___, 730 P.2d 914 (1986). We have not been made aware of any independent duty owed by Association to either Kaiser or Dillingham, or both, which would give rise to Association's liability to them as an indemnitor.

It follows that the cross-claims of implied indemnity made by Kaiser and Dillingham against the Association are "on account of" Messier's injuries, and were properly disposed of.

Finally, Dillingham and Kaiser contend that policy considerations dictate the recognition of their indemnity claims against the Association so as to effect a just and equitable result. The argument is without merit.

The court in *Kamali,* 54 Haw. at 157, 504 P.2d at 864, stated that HRS § 386-5 was a "clear expression of legislative intent to absolve the employer of all liability save that imposed by statute." The policy of chapter 386 is specific and is a clear expression by the legislature that the statute's remedies and the exclusiveness of the employer's liability are just and equitable.

As a matter of law Kaiser and Dillingham are not entitled to indemnity from Association and judgment was properly entered against them.

## CONCLUSION

Based on the foregoing discussion, we make the following disposition of the appeals.

(1) The order granting Kaiser's motion to strike Messier's Pretrial Statement and denying Messier's motion to add critical witnesses is vacated;

(2) The judgments in favor of Kaiser and Dillingham on Messier's products liability claim are affirmed and the judgments on Messier's negligence claim are reversed;

(3) The judgment in favor of Dillingham on Kaiser's cross-claim is reversed;

(4) The judgment in favor of Association against the indemnity claims of Kaiser and Dillingham is affirmed.

This matter is remanded to the lower court for further proceedings consistent with this opinion.

*Burt L. Snyder,* Attorney at Law, A Law Corporation, for Messier.

*Lyle Y. Harada (James Kawashima* and *John T. Komeiji* with him on the brief; *Kobayashi, Watanabe, Sugita & Kawashima* of counsel) for Association.

*William S. Hunt (Sheryl L. Nicholson* with him on the briefs; *Paul, Johnson & Alston* of counsel) for Kaiser.

*Miki Okumura (John R. Lacy* with her on the briefs; *Goodsill Anderson Quinn & Stifel* of counsel) for Dillingham.