17 F.3d 396
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James TOMPKINS, as Administrator of the Estate of Coleen
Tompkins, James Tompkins, Individually, and as Next Friend
of James Courtney Tompkins, and Dillon Tildon Tompkins,
Minors, Plaintiffs-Appellants,
v.
MEDTRONIC, INC., a Minnesota Corporation, Defendant-Appellee.
 No. 92-16687.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 8, 1994.*
Decided Feb. 10, 1994.
 
 1
 Before: ALARCON and FERNANDEZ, Circuit Judges, and WILSON, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 James Tompkins, as Administrator of the Estate of Colleen Tompkins, filed a products liability action against Medtronic, Inc., alleging that a defect in a pacemaker manufactured by Medtronic resulted in the death of his wife. Tompkins appeals from the judgment entered in favor of Medtronic following a trial by jury. Tompkins seeks reversal on the following grounds: (1) the district court clearly erred[1] when it denied Tompkins the opportunity to call Dr. J. Judson McNamara as an expert witness to testify as to the proximate cause of Colleen Tompkins' death; (2) the district court committed manifest error when it denied Tompkins' request to introduce the deposition testimony of Dr. Josefino Aguilar, a forensic pathologist; and (3) the district court erroneously excluded evidence regarding the Medtronic pacemaker lead wire model 6972, which contained defects that Tompkins argued were similar to model 6971, which was implanted in Colleen Tompkins. We affirm because we conclude that the district court did not abuse its discretion with regard to any of the contested evidentiary rulings.
 
 I.
 
 4
 Colleen Tompkins was implanted with a Medtronic pacemaker on May 19, 1982. On January 3, 1988, Colleen Tompkins collapsed and died while still implanted with the pacemaker. Tompkins filed this action against Medtronic in the district court on the basis of diversity jurisdiction. After repeated delays, trial by jury commenced on July 21, 1992. The jury rendered the following special verdict: (1) the pacemaker lead wire was dangerously defective; (2) the defect was not the proximate cause of Mrs. Tompkins' death; (3) Medtronic was negligent in its design, manufacture, marketing, or failure to warn of the pacemaker lead wire model 6971; (4) the negligence of Medtronic was not the proximate cause of Mrs. Tompkins' death. This appeal followed the entry of judgment in favor of Medtronic.
 
 II.
 
 5
 Tompkins contends that the district court clearly erred by denying his motion that Dr. McNamara be allowed to testify as an expert witness. Prior to trial, a magistrate judge denied as untimely Tompkins' request that Dr. McNamara be added to the expert witness list. The district court affirmed this ruling. We review a district court's ruling to exclude expert testimony for an abuse of discretion. United States v. Rahm, 993 F.2d 1405, 1410 (9th Cir.1993).
 
 
 6
 Tompkins offered the testimony of Dr. McNamara as an expert witness pursuant to Rule 702 of the Federal Rules of Evidence. Rule 702 provides in pertinent part: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702. Tompkins represented to the district court that Dr. McNamara would testify that a malfunction with the lead wire was the proximate cause of Colleen Tompkins' death. Tompkins argued that Dr. McNamara's testimony was required to refute the testimony of Dr. Michael Dang, an expert witness for Medtronic. Dr. Dang opined during his deposition that the Medtronic pacemaker was not the proximate cause of Colleen Tompkins' death.
 
 
 7
 The trial in this matter was initially scheduled to begin on March 12, 1991. On January 10, 1990, the magistrate judge held a pretrial conference and ruled that Tompkins was required to disclose the names of all expert witnesses by November 1, 1990. On November 15, 1990, Tompkins submitted a list of four experts. Dr. McNamara was not named as a witness. On October 22, 1991, the magistrate judge issued an amended scheduling conference order which stated that "[a]ny amended Pretrial Statements filed shall not list any witnesses not previously identified in the parties' Pretrial Statements."
 
 
 8
 Tompkins cites Patterson v. F.W. Woolworth, Co., 786 F.2d 874 (8th Cir.1986), Messier v. Ass'n of Apartment Owners, 735 P.2d 939 (Hawaii App.1987), and Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894 (3d Cir.1977) in support of his contention that the district court erred by excluding the testimony of Dr. McNamara. Our reading of these cases, however, demonstrates that Tompkins' reliance is misplaced.
 
 
 9
 In Patterson, the plaintiffs filed a wrongful death action after an electric fan they purchased at a Woolworth store caught fire, resulting in the death of five children. Patterson, 786 F.2d at 876. The district court required the parties to file a statement concerning the expected testimony of expert witnesses by September 2, 1983. Id. at 879. The plaintiffs did not give notice that Morris Mericle would testify as an expert witness until November 17, 1983. The plaintiffs did not provide the substance of his testimony to the defendants until January 10, 1984. Id. A defense expert, Emil Bahnmaier, was called at trial despite Woolworth's failure to list him as an expert witness during discovery. Id. The district court permitted Bahnmaier to testify because a third-party defendant had designated Bahnmaier as an expert and because the court permitted the plaintiffs to depose Bahnmaier prior to his testimony. Id. The Eighth Circuit affirmed because the defendant's failure to give timely notice that Bahnmaier would be an expert resulted from the plaintiffs' failure to designate Mericle as his expert witness in accordance with the district court's prior ruling. Id.
 
 
 10
 On November 29, 1990, Medtronic filed its designation of expert witnesses. Dr. Michael Dang was included on this list. Subsequently, Dr. Dang was listed as an expert witness on Medtronic's pretrial statement, filed on February 14, 1991. Tompkins contends that Medtronic did not disclose Dr. Dang's opinion regarding proximate causation until January 6, 1992, when it filed its third supplemental response to plaintiffs' first request for answers to interrogatories. On April 6, 1992, Tompkins deposed Dr. Dang. During his deposition, Dr. Dang testified that in his opinion the pacemaker was not the immediate cause of death. According to Tompkins, after taking Dr. Dang's deposition, he was "without an expert witness to testify as to causation." We disagree with Tompkins' characterization of his dilemma.
 
 
 11
 Tompkins was originally scheduled to take Dr. Dang's deposition on January 25, 1991. Dr. Dang was unable to attend. He indicated he would be available to give his deposition on January 28th. Tompkins failed to take Dr. Dang's deposition until April 6, 1992. Tompkins has not provided a satisfactory explanation which would justify his failure to take Dr. Dang's deposition at an earlier date. Tompkins' excuse for his untimeliness in naming Dr. McNamara as an expert witness is particularly troubling given that his attorney knew from the inception of this action that he would be required to demonstrate proximate causation as a prima facie element of his case. Tompkins' attempts to rationalize his belated designation of Dr. McNamara as an expert witness by stating that subsequent to February 20, 1991, two of his expert witnesses on the issue of causation became "unavailable." The record shows that the court issued an order on March 20, 1991, which precluded Tompkins from introducing the deposition testimony of these experts at trial. The court's order did not prevent Tompkins from calling these experts as live witnesses at trial.
 
 
 12
 In Patterson, the party who sought to introduce the testimony of the expert witness was not responsible for the untimely designation of the expert. In this matter Tompkins was responsible for the untimely designation of Dr. McNamara as an expert witness.
 
 
 13
 In Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894 (3d Cir.1977), the plaintiff filed an action under the Civil Rights Act of 1866 and the Fair Housing Act alleging that the defendant discriminated on the basis of race in processing applications to reside at a nonprofit housing complex. Id. at 897. Meyers discovered several new witnesses subsequent to the date that he filed his pretrial memorandum, which contained his witness list. Id. at 903. The district court excluded these witness from testifying. Id. at 904. The appellate court reversed, stating that "[A] reading of the district court's opinion demonstrates how important such testimony might have been and how critical is its absence." Id.
 
 
 14
 Tompkins' situation is significantly different from that encountered by the plaintiff in Meyers. During trial, Tompkins requested that the court reconsider its previous ruling and permit Dr. McNamara to testify. In his offer of proof to the district court, Tompkins stated that "[w]e still don't think he's [Dr. McNamara] any better a witness [than Dr. Adendorff] in this case to relate the cause of death and to meet the quantum of proof that the plaintiff's require...." Tompkins' concession demonstrates that the absence of Dr. McNamara's testimony was not critical because it would have been cumulative to Dr. Adendorff's testimony regarding the cause of Colleen Tompkins' death.
 
 
 15
 In Messier v. Ass'n of Apartment Owners, 735 P.2d 939 (Hawaii App.1987), the plaintiff filed a products liability and negligence action after being injured while working on the roof of the defendant's building. Id. at 943. Subsequent to the discovery cutoff date, Messier filed a motion to add critical witnesses. Id. at 944. The trial court denied the plaintiff's request to add these expert witnesses. Id. at 944. The appellate court reversed, holding that the plaintiff's excuse for his late filing of the motion to add critical witnesses constituted good cause because Messier indicated in his original pretrial statement that additional witnesses would be identified as they were discovered. Id. at 945.
 
 
 16
 In this matter, Medtronic was not on notice that Dr. McNamara would be designated as an expert witness, approximately sixteen months after the date that Tompkins was directed to disclose the identity of his expert witnesses. The district court did not abuse its discretion in denying Tompkins' motion to call Dr. McNamara as an expert witness.
 
 III.
 
 17
 Tompkins contends that the district court erred in refusing to admit the deposition testimony of Dr. Josefino Aguilar, a forensic pathologist. According to Tompkins, Dr. Aguilar's testimony would have demonstrated that the defective lead wire was the proximate cause of Colleen Tompkins' death. We review a district court's evidentiary ruling for an abuse of discretion. McGonigle v. Combs, 968 F.2d 810, 818 n. 6 (9th Cir.), cert. dismissed, 113 S.Ct. 399 (1992).
 
 
 18
 The district court refused to permit Tompkins to introduce Dr. Aguilar's deposition testimony because it believed that his testimony would be cumulative to that of Dr. Adendorff, a general surgeon, who had previously testified for the plaintiff regarding causation. Tompkins cites our decision in Wood v. Stihl, Inc., 705 F.2d 1101 (9th Cir.1983), in support of his contention.
 
 
 19
 In Wood, the plaintiff was injured while utilizing a chain saw that was manufactured by the defendant. Id. at 1103. The plaintiff called Dent as an expert witness. Id. at 1104. The district court sustained objections to portions of Dent's testimony on the ground that it was irrelevant in that Dent was not qualified as an expert on chain saw brakes. Id. The court then refused to admit Brooks' deposition testimony based upon a local court rule which prevents a party from having more than one expert witness testify on a subject. Id. at 1105. In reversing the district court, we held that the court erred when it excluded Brooks' deposition testimony. Id. at 1106. We reasoned that "even if the trial court had not erred in excluding the testimony of Dent, it would be error to have excluded the Brooks's deposition as the only non-party or independent technical expert of the appellant." Id. at 1106.
 
 
 20
 Wood does not support Tompkins' contention. Unlike the situation in Wood, where the court's ruling deprived the plaintiff of the testimony of both experts on the issues of product design and causation, Id., the district court in this matter allowed Tompkins to introduce the testimony of Dr. Adendorff.
 
 
 21
 At trial, Tompkins stated that "he [Dr. Aguilar] is in the same category as Dr. Adendorff. He's--he is a forensic pathologist." After reading Dr. Aguilar's deposition, the court stated that "obviously Dr. Aguilar's testimony would only be cumulative and I stand on my motion (sic) to preclude it from coming in." Under Rule 403 of the Federal Rules of Evidence, a district court has discretion to exclude cumulative evidence. De Anda v. City of Long Beach, 7 F.3d 1418, 1423 (9th Cir.1993). Because Tompkins failed to demonstrate that Dr. Aguilar's testimony would not be cumulative, the district court did not abuse its discretion when it refused to permit Tompkins to introduce Dr. Aguilar's deposition.
 
 IV.
 
 22
 Tompkins contends that the district court erred when it excluded evidence regarding the model 6972 lead wire because it had a defect that was similar to that of the model 6971 lead wire. The district court refused to admit this evidence on the ground that the evidence was prejudicial to Medtronic. The district court found that the model 6972 and 6972 lead wires were not similar. We review a district court's factual findings for clear error. Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990).
 
 
 23
 Tompkins claims that the composition of the model 6972 and 6971 lead wires is substantially the same, with the only "two differences being that the insulation of the 6972 is twice as thick as that of the 6971 lead wire. And the 6972 has two wires within its lead wire conduit as opposed to the 6971 having only one wire within its lead wire conduit." Tompkins asserts Hessen v. Jaguar Cars, Inc., 915 F.2d 641 (11th Cir.1990), supports his argument. We disagree.
 
 
 24
 In Hessen, the Eleventh Circuit held that the district court did not abuse its discretion when it permitted the plaintiff's insurance carrier to introduce evidence of a recall campaign which was initiated by Jaguar. Id. at 649. The court explained that the defect at issue in the recall campaign was similar to the defect at issue in the pending litigation. Id.
 
 
 25
 To lay a foundation for the admission of evidence of other accidents to prove a design defect, or notice of a defect, the party must demonstrate that there is a substantial similarity between the products in question. Cooper v. Firestone Tire & Rubber Co., 945 F.2d 1103, 1105 (9th Cir.1991). Evidence regarding similar accidents is relevant under Rules 401 and 402 of the Federal Rules of Evidence. Id.
 
 
 26
 The record demonstrates that both parties submitted affidavits pursuant to Medtronic's pretrial motion in limine to exclude evidence regarding the model 6972 lead wire. Medtronic submitted an affidavit from Kenneth Stokes, a chemist and Research Fellow, who had been involved in the research and development of cardiac pacemaker lead products at Medtronic since 1970. Mr. Stokes was involved in the research and development of both the model 6972 and 6971 lead wires. Stokes alleged in his affidavit that the model 6972 was "quite different" from the model 6971 because model 6971 is unipolar, and conducts electrical impulses to the right ventricle of the heart along one wire, whereas the model 6972 carries electrical impulses along two wires to the heart. Stokes further alleged that the thickness of the insulation of the two models is different, and that the model 6972 was designed to be utilized with different generators and has twice as many parts as the model 6971. Stokes concluded that the "model 6971 lead is substantially different from the model 6972 lead."
 
 
 27
 Tompkins submitted an affidavit from Dr. Maurice Hyman, a thoracic and cardiovascular surgeon. Dr. Hyman alleged that he had implanted approximately 275 Medtronic pacemakers. Dr. Hyman alleged that the failed lead wires on both the 6972 and 6971 models, "when tested electrically showed the same type of short circuiting." Dr. Hyman further alleged that he "did not remove the failed Medtronic Model 6971 lead from the patient. It did have an x-ray appearance of the type of deterioration seen on the 6972 series, and on electrical examination showed the same type of short circuiting." Dr. Hyman stated his opinion "that the Model 6971 lead is substantially the same as the Model 6972 lead. They both show insulation deterioration and the subsequent short circuiting which has been shown to occur when implanted in a human body and which is alleged to be the cause of failure in the case before this court."
 
 
 28
 The court was persuaded by Stokes' affidavit and other evidence in the record that the model 6972 lead wire was not substantially similar to the 6971 lead wire. As a consequence, the court rejected Tompkins' offer of proof regarding the model 6972 lead wire. The district court stated:
 
 
 29
 I don't find a similarity. I don't find it in the evidence in this case, nor do I find it in the literature. These happened two different--they're two different systems. One is unipolar. The other is bipolar. One of them is functioning for one purpose. The other has a different functioning.... [t]he biggest problem I find with this similarity is the effect of the degradation had two entirely different results.
 
 
 30
 The district court's finding that the 6972 lead wire was not substantially similar to the 6971 model is supported by Stokes' affidavit. Thus, the court's finding that there was no substantial similarity was not clearly erroneous. Accordingly, the district court did not abuse its discretion when it excluded evidence regarding the model 6972 lead wire. Having found that model 6972 was not substantially similar to 6971, it was unnecessary for the district court to determine whether introduction of this evidence would be prejudicial, because it lacked probative value. We may affirm on any basis supported by the record. Shaw v. California Dept. of Alcoholic Beverage Control, 788 F.2d 600, 603 (9th Cir.1986). The district court did not abuse its discretion when it excluded evidence regarding the model 6972 lead wire.
 
 
 31
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Tompkins erroneously represents that the standard of review on this issue is clear error. Tompkins also asserts that the denial of Tompkins' request to admit the deposition testimony of Dr. Aguilar is reviewed for manifest error. As set forth in the text, the proper standard of review for each of these issues is abuse of discretion