Beverly PATTERSON, Individually and as Administratrix of the Estate of Richard Patterson and Randy Patterson, Appellant

David Keleher, as Conservator of the Nicholas Patterson Conservatorship and Administrator of the Estate of Betsy Luane Patterson and Mary L. Medina, Individually and as Administratrix of the Estate of Brian John Medina,

v.

F.W. WOOLWORTH CO., d/b/a Woolco Department Store, and Lakewood Engineering and Manufacturing Company, Appellees.

Beverly PATTERSON, Individually and as Administratrix of the Estate of Richard Patterson and Randy Patterson and David Keleher, as Conservator of the Nicholas Patterson Conservatorship and Administrator of the Estate of Betsy Luane Patterson, and Mary L. Medina, Individually and as Administratrix of the Estate of Brian John Medina, Appellant,

v.

F.W. WOOLWORTH CO., d/b/a Woolco Department Store, and Lakewood Engineering and Manufacturing Company, Appellees.

Beverly PATTERSON, Individually and as Administratrix of the Estate of Richard Patterson and Randy Patterson and

David Keleher, as Conservator of the Nicholas Patterson Conservatorship and Administrator of the Estate of Betsy Luane Patterson, Appellant,

v.

F.W. WOOLWORTH CO., d/b/a Woolco Department Store, and Lakewood Engineering and Manufacturing Company, Appellees.

Nos. 84–1917, 84–1857 and 84–1890.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1985.

Decided March 25, 1986.

James Redmond, Sioux City, Iowa, for appellant.

Paul W. Deck, Sioux City, Iowa, for appellees.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Beverly Patterson, Mary Medina, and David Keleher, plaintiffs below, appeal from a judgment in favor of defendants F.W. Woolworth Co., d/b/a Woolco Department Store (Woolworth) and Lakewood Engineering and Manufacturing Co. (Lakewood). Plaintiffs brought this products liability action to recover damages resulting from a fire in Patterson's home which killed her three children and two other children, and which extensively damaged both personal and real property.

In their complaints, plaintiffs alleged that an electric fan that Woolworth sold to Patterson was defective and caused the fire. Through discovery, Woolworth notified plaintiffs that it had purchased the fan from Lakewood, which plaintiffs then added as a defendant. Woolworth cross-claimed against Lakewood, and asserted against Patterson the defense of contributory negligence. Lakewood, in turn, brought in a third-party defendant, Doerr Electric Corporation (Doerr), the alleged successor corporation of the manufacturer of the fan's motor, claiming that if the fan did cause the fire, which Lakewood denied, then Doerr actually was responsible. Although plaintiffs asserted theories of strict liability, negligence, and implied warranty,

the District Court[1] submitted the case to the jury only on the strict liability and negligence theories. The jury found Woolworth and Lakewood not liable to plaintiffs, and the District Court entered judgment on that verdict. We affirm.

### I.

In the early hours of June 16, 1980, Patterson's living room caught fire while Patterson, her three children (Betsy, Richard, and Randy), her two foster children (Serena and Trina Mauer), her grandchild (Nicholas Patterson), and one of her son's friends (Brian Medina) were asleep. Trina awoke to see flames coming from or surrounding a fan located next to the couch on which she was sleeping. After alerting Patterson, Trina and Nicholas escaped outside while Patterson unsuccessfully tried to put out the fire and then called the fire department. Patterson survived, but the five children who had been sleeping upstairs died of smoke inhalation.

At trial, the testimony regarding the condition of the fan before the fire came primarily from Patterson and Trina Mauer. Although the fan that allegedly started the fire was a model manufactured in 1971 or 1972, Patterson maintains that she bought it from Woolworth in 1977 or 1978. The fan worked properly for a few days, but soon was starting slowly and was making loud noises when operating. By 1980, the fan, in addition to being very dirty and dented, was still slow to start and rattled when operated on high speed. About three days before the fire, Serena noticed that the fan was smoking or sparking while running. She told Richard who unplugged the fan and took it downstairs to Patterson. Patterson told the children not to use the fan, wrapped the electrical cord around it, and put it next to the dresser in the living room. Several nights later, Randy moved the fan out into the living room and turned it on. He later went upstairs to sleep, leaving the fan on, while Trina remained asleep on the couch. She woke to the fire around 3:15 a.m.

The District Court submitted the case to the jury under theories of strict liability and negligence, denying plaintiffs' request that the case also be submitted under a theory of implied warranty. In completing the special verdict form consisting of twenty-five interrogatories, the jury found that Patterson had been negligent but that her negligence was not the sole cause of the fire. The jury also found that although the fan was defective at the time of sale, it was not unreasonably dangerous, and that defendants were not negligent in manufacturing or selling the fan. Upon receiving the verdict, the District Court further inquired as to what, if anything, the jury believed caused the fire other than Patterson's negligence.[2] The jury, though not answering the question directly, reaffirmed its finding that Patterson had been negligent in not putting the fan out of the children's reach and in not returning the fan to Woolworth. The jury added that "[i]n instruction # 8 the words defective *and* unreasonably dangerous [were] misleading. We felt the motor was defective *but* not unreasonably dangerous at the time of sale and not the sole cause of the fire." Record at 110 (emphasis in original).

The District Court entered judgment for defendants based on the jury's verdict, and denied plaintiffs' request for a judgment notwithstanding the verdict or a new trial. On appeal, plaintiffs seek to have us re-

---

1. The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

2. The court asked the jury:
    You have found that Beverly Patterson was negligent. You have also found that Beverly Patterson's negligence was not the sole or only proximate cause of the plaintiffs' injuries.

    You have also found that Woolco [Woolworth] and Lakewood were not negligent and did not sell an unreasonably dangerous product.
    Was there another proximate cause or causes other than the negligence of Beverly Patterson?
    If you have answered the above questions "yes," who or what was a proximate cause? Record at 109.

verse the judgment below and order a new trial, which they contend we should do on any or all of five grounds. First, they assert that the jury's responses to the verdict questions were inconsistent, showing that the jury was confused and could not have applied the law properly. Second, they claim that Iowa law does not require the jury to find that the fan motor was unreasonably dangerous at the time of sale, and consequently, that the instructions misled and confused the jury on this point of law, causing them to reach the wrong conclusion. Third, plaintiffs argue that the District Court erred in allowing defendants' expert to testify about experimental tests conducted shortly before trial. Fourth, they cite as reversible error the District Court's refusal to submit the case to the jury under a theory of implied warranty. Fifth, plaintiffs claim further error in the District Court's refusal to give plaintiffs' proffered instruction on circumstantial evidence.

## II.

### A.

■ We turn first to plaintiffs' argument that the answers to the verdict interrogatories were inconsistent, demonstrating jury confusion. Plaintiffs contend that the inconsistencies lie in the jury's findings that Patterson was negligent, that the fan was defective but not unreasonably dangerous at the time of sale, and that the fan was not the sole cause of the fire. In a somewhat confusing series of related arguments, plaintiffs assert that the jury must have thought it could find defendants liable only if the defective fan was the *sole* cause of the fire rather than *a* proximate cause. They also claim that no reasonable jury could have found defendants not liable unless it was confused or prejudiced. We reject these contentions.

The Supreme Court, when confronting similar questions about verdict consistency, has said that "it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: 'Where there is a view of the case that

makes the jury's answers to special interrogatories consistent, they must be resolved that way.'" *Gallick v. Baltimore & Ohio Railroad,* 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963) (quoting *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962)); *see Ludwig v. Marion Laboratories, Inc.,* 465 F.2d 114, 118 (8th Cir.1972). The Court also has said that a search for one possible view of the case which will make the jury's findings inconsistent collides with the Seventh Amendment. *Ellerman Lines,* 369 U.S. at 364, 82 S.Ct. at 786; *see Wagner v. International Harvester Co.,* 611 F.2d 224, 229 n. 5 (8th Cir.1979).

We agree with the District Court that the jury's responses to the verdict interrogatories can be read as being consistent with one another. As the District Court aptly points out in its order denying plaintiffs' motion for judgment notwithstanding the verdict or a new trial, the jury's answers to each interrogatory were unequivocal. The jury did not return a verdict laden with "maybes". Instead, it clearly found that Patterson was negligent, that the fan was defective, but not unreasonably dangerous, and that neither Woolworth nor Lakewood was negligent. Plaintiffs contend that because the jury found the fan defective and that it was a cause of the fire, the jury could conclude only that the fan was unreasonably dangerous and that the defendants were liable under strict liability in tort. However, "unreasonably dangerous" is an element of Iowa's strict liability tort law that plaintiffs must prove to the jury's satisfaction by a preponderance of the evidence, not an inference that this Court can draw from the evidence. *See Osborn v. Massey-Ferguson, Inc.,* 290 N.W.2d 893, 901 (Iowa 1980); *Kleve v. General Motors Corp.,* 210 N.W.2d 568, 570 (Iowa 1973). Because the jury specifically found that the fan was not unreasonably dangerous, plaintiffs cannot recover under a theory of strict liability. We find no inconsistency in the jury's findings that the fan, while defective, was not unreasonably dangerous.

Moreover, we concur with the District Court's analysis that

> [t]he jury in the present case may well have concluded that this fan did not contain a defect beyond the contemplation of an ordinary consumer. While it is true that consumers do not expect fans to start fires, the jury could have concluded that ordinary consumers would expect that a fan which was obviously not functioning properly could start a fire if the use of the fan continued.

*Patterson v. Woolworth,* Nos. C81–4018 & C81–4017, at 5 (N.D. Iowa June 29, 1984) (Order denying motion for judgment n.o.v. or new trial).

### B.

■ Plaintiffs next argue that the jury instructions misstated Iowa products liability law by informing the jury that to find for plaintiffs in strict liability the jury had to find that the fan was both defective and unreasonably dangerous at the time of sale. This, however, is exactly what Iowa law requires.[3] Instruction 9 clearly states that Iowa law "provides that one who *sells* any product *in a defective condition unreasonably dangerous* to the user or consumer or to his or her property is subject to liability...." Record at 52 (emphasis added). Instruction 14 further informs the jury that they "must determine whether the product was unreasonably dangerous only with reference to those conditions that you find *existed at the time* you find from the evidence *that the product was manufactured or sold.*" Record at 58 (emphasis added). These are correct statements of Iowa law and could not undermine the fairness, integrity, or reputation of the trial. *See Chown v. USM Corp.,* 297 N.W.2d 218, 221 (Iowa 1980) (product must be unreasonably dangerous at time of manufacture); *Aller v. Rodgers Machinery Manufacturing Co.,* 268 N.W.2d 830, 837 (Iowa 1978) (same); *See* Restatement (Second) of Torts § 402A & comment g (1965).

In any event, plaintiffs did not make a proper objection to these instructions, so we would reverse on this ground only if giving these instructions constituted plain error. *See Gander v. Mr. Steak of Sun Ray, Inc.,* 774 F.2d 920, 923 (8th Cir.1985). Examining the instructions as a whole to ascertain if the charge "fairly and adequately submits the issues in the case to the jury," *Swift v. R.H. Macy's & Co.,* 780 F.2d 1358, 1361 (8th Cir.1985), and *see Jiffy Markets, Inc. v. Vogel,* 340 F.2d 495, 500 (8th Cir.1965), we do not find any error, much less plain error.

■ Although their brief is not clear, plaintiffs seem to contend that the instructions did not clearly set forth Iowa law on sole proximate causation, product misuse, and assumption of risk. We find these contentions meritless. Our review of the record indicates that plaintiffs failed to make these objections to the instructions when they were given, and thus have not complied with Fed.R.Civ.P. 51. Moreover, the verdict interrogatories refer to the instructions in question (24 and 24A) only twice: once in reference to whether Patterson's negligence was the sole proximate cause of the injuries claimed, and once with respect to the jury's assessment of damages due Patterson. The jury never reached the second issue because it found that defendants were not liable under either a strict liability or negligence theory. Reviewing the charge to the jury as a whole, we cannot say that the District Court committed plain error in giving instructions 24 and 24A. *See Gander,* 774 F.2d at 923.

Plaintiffs further contend that the jury mistakenly used notions of contributory negligence in reaching their conclusions on the strict liability claim. We note that Iowa law does not recognize contributory negligence as a defense to a claim based on strict liability in tort. *See Speck v. Unit Handling Division,* 366 N.W.2d 543, 545 (Iowa 1985); *Henkel v. R & S Bottling Co.,*

---

**3.** This is a diversity case and we must look to Iowa law in assessing the substantive correctness of the jury instructions. *See Erie Railroad*

*v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

323 N.W.2d 185, 191 (Iowa 1982). However, after reviewing the record, we are satisfied that the jury did not apply the instructions on contributory negligence to the question of whether plaintiffs were entitled to recover on their strict liability theory. Each special interrogatory question was keyed correctly to specific jury instructions, and "[a]bsent exceptional circumstances not present here, we assume that the jury understood and properly applied the court's instructions." *Banks v. Koehring Co.*, 538 F.2d 176, 179–80 (8th Cir. 1976).

### C.

Plaintiffs assert two grounds in contending that the District Court erred in admitting evidence of experiments that defendants' expert witness Emil Bahnmaier conducted shortly before trial. First, plaintiffs claim that the District Court should not have allowed the expert to testify because defendants did not notify plaintiffs sufficiently before trial so that they could prepare to meet his testimony. Second, plaintiffs assert that the evidence is misleading and prejudicial.

Before trial, the District Court required all parties to file statements concerning the anticipated testimony of expert witnesses by September 2, 1983. Apparently none of the parties fully complied with that pretrial order: plaintiffs did not make their expert, Morris Mericle, known until the pretrial conference on November 17, 1983, and the substance of his testimony was not available until January 10, 1984. After plaintiffs revealed the substance of Mericle's testimony, defendants apparently had Bahnmaier conduct several experiments in January and early February in hopes of refuting Mericle's testimony. Woolworth and Lakewood then called Bahnmaier to testify at trial as an expert witness concerning those experiments, although neither Woolworth nor Lakewood had listed him as an expert witness during the discovery phase of the litigation. However, the third-party defendant Doerr had designated Bahnmaier as an expert witness, and the parties deposed him eight months before trial about experiments he conducted in 1982. Plaintiffs did not request a continuance when defendants announced Bahnmaier would testify. During the trial, the District Court permitted plaintiffs to depose Bahnmaier before he testified in court, and Mericle was present at that deposition. Bahnmaier's trial testimony contradicted Mericle's theory of how the fan could have caused the fire.

Flexible application of pretrial orders is within the sound discretion of the District Court. *Dabney v. Montgomery Ward & Co.*, 692 F.2d 49, 51 (8th Cir.1982), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983). As the Fifth Circuit has noted, the factors that a district court should consider in deciding whether to exclude the testimony of a witness not made known in a manner complying with a pretrial order include the reason for failing to name the witness, the importance of the witness's testimony, the opposing party's need for time to prepare for the testimony, and whether a continuance would be useful. *Murphy v. Magnolia Electric Power Association*, 639 F.2d 232, 235 (5th Cir. 1981) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2050, at 327 (1970)).

Applying these factors, we find that the District Court did not abuse its discretion in permitting Bahnmaier to testify. First, defendants did not name Bahnmaier as a witness until it became apparent that they would have to refute the testimony of plaintiffs' expert Mericle, the substance of whose testimony was not available until long after the pretrial order closed discovery. Second, Bahnmaier's testimony was important in that it was intended to refute a critical issue in the case: whether the fan caused the fire. Third, plaintiffs had the opportunity to review the photographs Bahnmaier used to supplement his testimony and to depose Bahnmaier before he testified at trial. Although plaintiffs were under no obligation to request a continuance to prepare for Bahnmaier's testimony, *see Dabney*, 692 F.2d at 53 n. 4, any

claim of prejudice or surprise is vitiated by plaintiffs' failure to request a continuance. *See De Laval Turbine, Inc. v. West India Industries, Inc.*, 502 F.2d 259, 263 n. 6 (3d Cir.1974).

Plaintiffs also contend that Bahnmaier's experiments were inaccurate and hence misleading and prejudicial because Bahnmaier could or did not replicate the actual conditions existing when the fire occurred. Plaintiffs hypothesize that the fan motor defect caused electrical arcing along the power supply cord, which in turn caused the fire by igniting combustible materials in Patterson's living room. According to plaintiffs, Bahnmaier's experiments resulted in the test fan motors drawing a larger than normal electrical current, which plaintiffs argue would blow a circuit breaker rather than result in electrical arcing along the fan's power supply cord. In addition, plaintiffs note that Bahnmaier's experiments could not simulate the actual physical condition of the fan motor, such as the wearing of motor parts after prolonged use. Plaintiffs also claim that the fan motors used were of a different horsepower.

■ The admissibility of experimental evidence is within the discretion of the District Court and we will not overturn that decision absent a showing of abuse of discretion. *Wagner*, 611 F.2d at 232. "A court may properly admit experimental evidence if the tests were conducted under conditions substantially similar to the actual conditions. Admissibility, however, does not depend on perfect identity between actual and experimental conditions. Ordinarily, dissimilarities affect the weight of the evidence, not its admissibility." *Randall v. Warnaco, Inc.*, 677 F.2d 1226, 1233–34 (8th Cir.1982) (citations omitted).

■ Here, the District Court allowed plaintiffs to return their expert to the courtroom to hear Bahnmaier's testimony and to present rebuttal testimony. The court characterized the rebuttal testimony as very effective, making the value of Bahnmaier's testimony highly questionable. In its post-trial order, the District Court found that Bahnmaier's testimony did not unfairly prejudice plaintiffs. Our review of the record leads us to agree, and we conclude that the District Court did not abuse its discretion in admitting Bahnmaier's testimony.

#### D.

■ Plaintiffs asserted three theories of liability: strict liability, negligence, and breach of implied warranty. Although plaintiffs requested the District Court to submit the case to the jury under all three theories, the court submitted this case only under plaintiffs' theories of strict liability and negligence. Plaintiffs argue that the District Court erred in not also submitting the case under their implied warranty theory.

Whether plaintiffs were entitled to have the case submitted on breach of implied warranty in addition to strict liability and negligence turns on Iowa law. The District Court's determination concerning Iowa law is entitled to considerable deference. *McKnelly v. Sperry Corp.*, 642 F.2d 1101, 1106 n. 4 (8th Cir.1981). Here, the District Court relied upon *Hawkeye-Security Insurance Co. v. Ford Motor Co.*, 174 N.W.2d 672 (Iowa 1970).[4] In that case, the Iowa Supreme Court held that an implied warranty theory ordinarily should not be submitted to the jury in conjunction with a strict liability in tort theory. *Id.* at 684–85. The Court observed that although there

4. Plaintiffs' reliance on *Van Wyk v. Norden Laboratories, Inc.*, 345 N.W.2d 81 (Iowa 1984), is misplaced. *Van Wyk* is factually distinguishable from the present case because in *Van Wyk* the trial court submitted the case only on a theory of an implied warranty of fitness for a particular purpose and refused to submit the case to the jury on either a strict liability or an implied warranty of merchantability theory.

The Iowa Supreme Court found that the trial court had erred in not submitting the case under either of the latter theories. *Id.* at 87–88. As the District Court here concluded, the Iowa Supreme Court did not indicate in *Van Wyk* that the trial court would have to submit the case under *both* theories absent exceptional circumstances.

was substantial evidence to support both theories of liability, that

> does not mean both theories had to be submitted to the jury as a matter of right. This depends on the facts of each case. Ordinarily strict liability in tort is in lieu of one or more of the implied warranty theories. Such a warranty theory should not necessarily be submitted with a strict liability in tort theory. We do not foreclose fact situations where both theories should be submitted but recognize such a situation would be exceptional.

*Id.* (footnote omitted). On appeal after remand of *Hawkeye,* the Iowa Supreme Court again considered this issue and clarified its prior holding:

> We interpret our prior pronouncement to mean simply that we recognize as a practical matter, as opposed to a rule of law, that not many cases will involve both theories sufficiently to warrant having them presented for the consideration of a jury. We do not interpret it to mean ... that both theories shall never be given consideration in the same case.

*Hawkeye Security Insurance Co. v. Ford Motor Co.,* 199 N.W.2d 373, 381 (Iowa 1972) (*Hawkeye II*).

In *Hawkeye II,* the Iowa Supreme Court referred with approval to *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), in which the California Supreme Court distinguished between claims based on personal injuries, where strict liability in tort overrides recovery on a warranty theory, and claims for damages attributable to loss of bargain or loss of business, where the warranty approach would govern the recovery. *Id.,* 45 Cal. Rptr. at 21–24, 403 P.2d at 149–52. The Iowa Supreme Court further noted that the laws of warranty primarily serve the needs of commercial transactions. *Hawkeye II,* 199 N.W.2d at 382.

Plaintiffs' claims in the present case are based upon the personal injuries and the property damage resulting from the fire in Patterson's home. Accordingly, we are inclined here to believe, as in *McKnelly,* that "as a practical matter, the issues under implied warranty are adequately submitted under strict liability...." 642 F.2d at 1105. In any event, we cannot say that the District Court erred in determining as a matter of Iowa law that the factual situation here was not so exceptional as to require submission to the jury of both the strict liability and implied warranty theories of recovery.

### E.

In their last argument for reversal, plaintiffs contend that the District Court erred by refusing to give plaintiffs' proffered instruction on circumstantial evidence. At trial, however, plaintiffs did not object to the court's failure to give the instruction. Because plaintiffs failed to preserve this issue for appeal, *see* Fed.R.Civ.P. 51, we will overlook the omission only if failure to give the instruction constitutes plain error. *See Gander,* 774 F.2d at 923. Having reviewed the proffered instruction and the instructions as a whole, we are satisfied that the court's refusal to give this instruction was not plain error, if indeed it was error at all. We are confident the jury understood that it was to consider all the evidence, both direct and circumstantial, presented during the trial.

Affirmed.