# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————————

No. 01-2248

————————————

| | | |
|---|---|---|
| Life Plus International, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Wayne Brown, Fran Brown, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Robert L. Goodrich, | * | |
| | * | |
| Trustee-Appellee. | * | |

————————————

Submitted: September 12, 2002
Filed: January 15, 2003 (corrected 1/23/03)
(corrected 2/19/03)

————————————

Before HANSEN, Chief Judge, WOLLMAN and RILEY, Circuit Judges.

————————————

HANSEN, Circuit Judge.

In this diversity case, Life Plus International appeals the judgment of the district court[1] awarding Fran Brown $65,000 in compensatory damages and $180,000 in punitive damages on her counterclaims for breach of contract and conversion. We affirm.

I.

Wayne and Fran Brown were members of and distributors for Life Plus International (hereinafter "Life Plus"), which is a network marketing company that sells health care supplements. In a network marketing business, individual members offer the company's products for sale to friends and acquaintances and attempt to recruit those friends and acquaintances as members and distributors in the company. Individual distributors earn commissions on the sales of their recruits. They also earn commissions based on sales by their recruits' subsequent recruits, thus building a network, or chain, based upon their marketing and recruiting capabilities.

A network marketing company's members can trace the line of persons whom they recruited, both directly and indirectly, and this is called a member's "down-line" or "genealogy." This down-line forms the basis for the members' compensation, and Life Plus regularly provides members with information about the members in their down-lines to aid in their cultivation of new recruits. Life Plus's policies and procedures prohibit members from "cross-line sponsoring," which occurs when members use the proprietary customer information about their down-line to redirect members to another network marketing company.

Wayne and Fran Brown joined Life Plus on March 7, 1995, and each entered into separate membership agreements. Additionally, Wayne Brown signed an

---

[1]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

agreement to become a Diamond member in January 1999, which entitled him to greater compensation on the promise that he would not be a member in another company. Together, the Browns were responsible for approximately 10 to 20% of all Life Plus product sales. While Fran and Wayne each maintained their own down-line, they often worked as a team and made presentations together at Life Plus-sponsored events about how to work together to build a network marketing down-line and how to use down-line reports to identify successful Life Plus members and assist members in order to increase their own down-line.

Life Plus learned in October 1999 that Wayne was a member of a competing network marketing company, PrePaid Legal, which sold legal insurance. Fran was not on PrePaid Legal's membership list, but Life Plus nevertheless believed that Fran and Wayne were working together as a team for PrePaid Legal. Life Plus was concerned that Wayne and Fran were cross-line sponsoring and thus taking members away from Life Plus's proprietary customer lists.

Life Plus sued the Browns for breach of contract in Arkansas state court on December 1, 1999. On the same date, Life Plus suspended the Browns and retained their earned commissions. From that date, the Browns have not received payments that they contend they were entitled to under their member agreements with Life Plus. The Browns counterclaimed for breach of contract and conversion, among other claims, and removed the case to federal district court on diversity grounds. The Browns are residents of California, and Life Plus is an Arkansas general partnership with its principal place of business in Arkansas.

The case proceeded to trial. The jury rejected Wayne's counterclaims and found that he had violated his agreements with Life Plus. The evidence showed that Wayne had been a member of PrePaid Legal for a year during which he was receiving extra compensation from Life Plus for a promise not to be a member of a competing network company. Also, Wayne had received compensation from PrePaid Legal

based on purchases by Life Plus members in violation of his agreements with Life Plus which prohibited cross-line sponsoring. The jury awarded Life Plus a verdict of $67,407.66 against Wayne for breach of his Diamond agreement and nominal damages of $1 for his breach of the general membership agreement.

The jury found in favor of Fran. The evidence showed that Fran was not a member of PrePaid Legal and that she had not been cross-line sponsoring with Wayne. Shortly before trial, and after discovery had been closed for almost eight months, Life Plus disclosed a witness named Deborah Werner, who was prepared to testify that Fran had tried to recruit her to join PrePaid Legal on December 4, 1999, which was three days after Life Plus sued Fran and suspended her pay. The district court excluded this evidence as untimely. The jury rejected Life Plus's claims and awarded Fran $65,000 in compensatory damages for breach of contract and conversion, and $180,000 in punitive damages.

Life Plus appeals the judgment in favor of Fran. Wayne filed a cross-appeal, which has been dismissed. The Browns have since filed for bankruptcy and substituted their bankruptcy trustee, Robert L. Goodrich, (hereinafter, "the Trustee") as the appellee in this case.

## II.

Life Plus raises four arguments on appeal. Life Plus asserts that the district court abused its discretion by excluding the testimony of Deborah Werner, that the district court erred by entering judgment on the verdict for punitive damages, that the district court abused its discretion by refusing to allow discovery during the eight months preceding trial, and that the district court abused its discretion by imposing unreasonable time constraints for presenting the case at trial. We address each argument in turn.

4

A.  Exclusion of Testimony

Life Plus first challenges the district court's exclusion of the witness Deborah Werner.  We review evidentiary rulings for an abuse of discretion, according such decisions "substantial deference."  Gagnon v. Sprint Corp., 284 F.3d 839, 856 (8th Cir.), cert. denied, 2002 WL 1969289 and 2002 WL 31018176 (U.S. Nov. 4, 2002) (Nos. 02-273/02-295).  In her proffered testimony, Ms. Werner stated that on Saturday, December 4, 1999, Fran Brown telephoned her and attempted to recruit her to join PrePaid Legal.  (Trial Tr. at 58, May 3, 2001.)  Life Plus asserts that this testimony was crucial to its ability to demonstrate that Fran had been cross-line recruiting with Wayne, contrary to her testimony that she had not.

The district court refused to allow Ms. Werner to testify as a trial witness or in rebuttal because she was not disclosed within the limits of the court's pretrial discovery order and her testimony was not proper rebuttal.  Where a litigant challenges the district court's exclusion of a witness for untimely disclosure, "we start with the premise that a district court may exclude from evidence at trial any matter which was not properly disclosed in compliance with the Court's pretrial order." Dabney v. Montgomery Ward & Co., 692 F.2d 49, 51 (8th Cir. 1982) (internal quotations omitted), cert. denied, 461 U.S. 957 (1983).  In Dabney, we permitted a litigant to overcome this premise by demonstrating that the witness was newly discovered, that the evidence was relevant and material, and that the new witness was available for deposition prior to trial.  692 F.2d at 51-53.  We also cautioned district courts not to "adhere blindly" to the letter of a pretrial order without considering the reasons for a party's noncompliance.  Id. at 52.  More recently, we have held that in deciding whether to exclude a witness, a district court should consider factors such as (1) the reason for failing to disclose the witness earlier, (2) the importance of the witness's testimony, (3) the opposing party's need for time to prepare, and (4) whether a continuance would be useful.  Patterson v. F.W. Woolworth Co., 786 F.2d 874, 879 (8th Cir. 1986).

Ms. Werner's testimony was not known to Life Plus until she came forward of her own accord, and she was available for deposition during the trial. Nevertheless, we conclude that the district court did not abuse its discretion in excluding her testimony as untimely. Under either the analysis set forth in <u>Dabney</u> or <u>Patterson</u>, the importance or materiality of a newly discovered witness's testimony is a major consideration. Our review indicates that the testimony of Ms. Werner was not as crucial as Life Plus makes it out to be. The proffered testimony that Fran called Werner on December 4, 1999, is not contrary to Fran's testimony that she did not work for PrePaid Legal before being notified on December 2, 1999, that Life Plus had sued her. The assertion that Fran called Werner two days after being notified of Life Plus's lawsuit against her does nothing to bolster a legitimate inference that Fran had been cross-line recruiting before she was sued and suspended. We find no abuse of discretion in the district court's exclusion of this testimony as untimely.

Additionally, we find no abuse of discretion in the district court's refusal to allow Life Plus to use Ms. Werner's testimony as rebuttal evidence. "[W]e may reverse a trial court's determination of the admissibility of rebuttal testimony only where there has been a clear abuse of discretion." <u>Gossett v. Weyerhaeuser Co.</u>, 856 F.2d 1154, 1156 (8th Cir. 1988). We believe Life Plus was attempting to get admitted through the back door of rebuttal evidence that which the district court had correctly barred as being untimely disclosed at the front door. Our careful review convinces us that the district court's conclusion that Ms. Werner's anticipated testimony was not proper rebuttal was correct and the district court did not clearly abuse its discretion in excluding it.

## B. Punitive Damages

Life Plus argues that the district court erred in entering judgment on the jury's award of punitive damages because the verdict was ambiguous and Arkansas law would prohibit an award of punitive damages if it is unclear what amount of the

verdict was awarded on the conversion claim. We first address the jurisdictional issue raised by the Trustee. The Trustee argues that there is no jurisdiction to review this issue because Life Plus did not raise the challenge until the posttrial motion, and Life Plus did not properly appeal the posttrial order. Life Plus filed its initial notice of appeal before filing the posttrial motion and then failed to file a new notice or an amended notice after the district court ruled on the posttrial motion.

Life Plus asserts that there is jurisdiction because it filed a motion to hold the appeal in abeyance in this court, which was granted. Life Plus asserts that the abeyance operated to suspend this court's rules and that the court then took jurisdiction over all district court orders when the abeyance lifted. We disagree.

The Federal Rules of Appellate Procedure provide that this court can for good cause suspend any provision of the rules in a particular case. Fed. R. App. P. 2 (2002). Nevertheless, this court cannot enlarge the time limits for filing a notice of appeal as prescribed in Rule 4. Torres v. Oakland Scavenger Co., 487 U.S. 312, 314-15 (1988). Consequently, our decision to hold this appeal in abeyance while the district court ruled on Life Plus's pending posttrial motions permitted the prematurely filed notice of appeal to be perfected once the district court disposed of all posttrial motions, Fed. R. App. P. 4(a)(4)(B)(i), but it did not enlarge the time for filing a notice of appeal for the posttrial motions. To challenge the posttrial rulings, the appellant must file a timely new or amended notice of appeal. Fed. R. App. P. 4(a)(4)(B)(ii) (stating "[a] party intending to challenge an order disposing of any motion listed [which includes posttrial motions of the type at issue here]. . . must file a notice of appeal, or an amended notice of appeal"); see also Miles v. Gen. Motors Corp., 262 F.3d 720, 722-23 & n.3 (8th Cir. 2001) (requiring a new or amended notice of appeal to be filed in order to appeal the posttrial motion that had been pending when the initial notice of appeal was filed).

This court gave no indication to the appellant that an amended notice of appeal was not required to appeal the rulings on the posttrial motion. To the contrary, when we set aside the abeyance our order stated that "[a]ny new notices of appeal will be consolidated with this case, and the briefing schedule will be revised, if necessary," anticipating the possibility of a new notice of appeal based upon the posttrial order. (8th Cir. Order, July 11, 2001.) Because no new or amended notice of appeal was filed regarding the posttrial order, we lack jurisdiction to review it.

Life Plus next asserts that it argued consistently throughout this case, and not only in the posttrial motion, that Fran Brown should not be allowed to recover on both contract and tort claims. Life Plus asserts that the district court's failure to require Fran to elect remedies resulted in an ambiguous jury verdict. The Federal Rules of Civil Procedure provide that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict." Fed. R. Civ. P. 51. Because Life Plus did not object to the form of verdict, we review for plain error. Horstmyer v. Black & Decker, (U.S.), Inc., 151 F.3d 765, 770-71 (8th Cir. 1998); Arnott v. Am. Oil Co., 609 F.2d 873, 889 (8th Cir. 1979), cert. denied, 446 U.S. 918 (1980).

"Any plain error exception to Fed. R. Civ. P. 51 is confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings." Arnott, 609 F.2d at 889 (internal quotations omitted). To require reversal, a plain error must result in a miscarriage of justice. Horstmyer, 151 F.3d at 771. We apply state law to determine the substance of the instruction in a diversity case, but federal law governs our review of the discretion exercised in refusing an instruction. Id. "[T]he district court has discretion in the style and wording of jury instructions so long as the charge as a whole fairly and adequately states the law." Id. (alteration in original, internal quotations omitted).

8

Under Arkansas law, "where on the facts either an action in contract or one in tort is possible, the plaintiff must specifically plead and prove his cause of action in tort in order to be awarded punitive damages." L.L. Cole & Son, Inc. v. Hickman, 665 S.W.2d 278, 281 (Ark. 1984). Arkansas law does not prohibit a party from pleading and proving both an action for breach of contract and an action tort where the conduct supports both actions. See Benny M. Estes and Assoc. v. Time Ins., 980 F.2d 1228, 1231 (8th Cir. 1992). If the verdict is ambiguous, the judge may send the jury back for further explanation of its intent. Simmons v. State, 645 S.W.2d 680, 688 (Ark.), cert. denied, 464 U.S. 865 (1983).

Here, Life Plus challenges the award of compensatory and punitive damages on the conversion claim. The district court presented the jury with Verdict No. 9, in which the jury specifically found that Fran Brown had proven her claim for breach of contract, and Verdict No.10, in which the jury specifically found that Fran Brown had proven her claim for conversion against Life Plus. On Verdict No. 11, the jury awarded Fran $65,000 in damages after being instructed to award damages only if it answered "yes" in either Verdict No. 9 or 10. But Verdict No. 12 instructed the jury to award punitive damages only if it found in Verdict No. 10 that Fran Brown had proven her conversion claim and if it had awarded damages on the conversion claim in Verdict No. 11. The jury awarded Fran $180,000 in punitive damages.

Considering the instructions as a whole, we conclude that they fairly and adequately state Arkansas law. The instructions required Fran to prove her conversion claim and required the jury to award punitive damages only if she had proven her conversion claim and only if the jury had awarded her damages on that claim. The failure of the jury to specify how much of the damages award was allocated to the conversion claim does not require reversal in this case. "Where the charge to the jury correctly sets forth the law, a lack of perfect clarity will not render the charge erroneous." Horstmyer, 151 F.3d at 771 (internal quotations and alteration omitted).

Even if we assume error because the jury did not separate out the amount of damages awarded to each claim, any such error did not result in a miscarriage of justice or substantial unfairness to the parties because we can evaluate the reasonableness of the punitive damage award in light of the evidence. The conversion claim entitled Fran to the return of her property that Life Plus wrongfully withheld. The undisputed evidence shows that Life Plus withheld more than $11,000 in checks from Fran. On this evidence, a punitive damages award of $180,000 was not unreasonable, and no miscarriage of justice occurred. See Routh Wrecker Serv., Inc. v. Washington, 980 S.W.2d 240, 242 (Ark. 1998) (concluding that a ratio of punitive to compensatory damages of 75 to 1 was not grossly excessive because it was well below the 500 to 1 ratio approved by the Supreme Court in BMW of N. Am. v. Gore, 517 U.S. 559 (1996)).

## C. Discovery

Life Plus argues that the district court erred by not extending the discovery deadline after the court sua sponte continued the trial for eight months. The original trial date was set for September 25, 2000, and the discovery deadline was August 11, 2000. On August 3, 2000, the district court rescheduled the trial to April on its own motion due to scheduling conflicts but did not extend the discovery deadline. We review the decisions of the district court regarding its management of the discovery process for an abuse of discretion. Lyoch v. Anheuser-Busch Cos., 139 F.3d 612, 616 (8th Cir. 1998).

We see no abuse of discretion. By the time the trial was rescheduled, the discovery period was already close to an end. In response to Life Plus's Motion for Revised Scheduling Order, the district court permitted Life Plus to continue discovery past the deadline in three specific areas. Life Plus filed no further motion to extend the discovery deadline and in fact represented to the district court in support of its motion for summary judgment that the liability issues were ripe for summary

10

judgment. Life Plus identifies no discovery request relating to Fran Brown that was sought and denied. Thus, we find no abuse of discretion in the district court's management of the discovery process. See Peterson v. Gen. Motors Corp., 904 F.2d 436, 439 (8th Cir. 1990) (finding no abuse of discretion in excluding rebuttal witness where discovery closed eight months prior to trial and a pretrial order required parties to file witness lists prior to trial).

## D. Trial Time Constraints

Finally, Life Plus asserts that the district court abused its discretion by unreasonably restricting the time allowed for Life Plus to present its case at trial. Trial management decisions are reviewed for an abuse of discretion. Johnson v. Ashby, 808 F.2d 676, 678 (8th Cir. 1987). Trial courts are permitted to impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence. Id.

> [I]t may be an abuse of the trial court's discretion to exclude probative, non-cumulative evidence simply because its introduction will cause delay, and any time limits formulated in advance of trial must be fashioned with this in mind. Such limits should be sufficiently flexible to accommodate adjustment if it appears during trial that the court's initial assessment was too restrictive.

Id. (internal quotations omitted). To preserve this issue for our review, a party must lodge a timely objection to the time limits and must make a proffer of evidence that was excluded for lack of sufficient time. Id. at 678-79. We reemphasize our disapproval of rigid hourly time constraints at trial, but in this particular case, we find no abuse of discretion.

The parties had estimated that the case would take four days to try. The district court allotted five days and gave each side 11.5 hours to present evidence. Prior to

11

trial, Life Plus sought extra time, asserting that its direct evidence alone would take 12 hours and 5 more hours might be needed for cross-examination. Life Plus also complains that it was forced to drop a claim against Fran Brown and to limit its cross-examinations due to the restrictive time limits. Life Plus cannot demonstrate prejudice by the district court's refusal to grant more time, however, because it failed to make an offer of proof concerning what evidence it was forced to forego due to the time limits. In the posttrial order, the district court stated it was unaware that Life Plus gave up a claim due to the time limits. We conclude that Life Plus sacrificed its challenge to the time limits by not presenting an offer of proof to the district court concerning what evidence and claims it was unable to present due to the time limits.

III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

12