*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1107**

In re the Matter of
Boyd Jacob Phelps,
petitioner,
Respondent,

vs.

Lynnea Diana Sterling,
Appellant.

**Filed August 31, 2015
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-FA-13-2680

Sandra Jean Connealy Zick, Tuzinski & Zick, L.L.C., Brooklyn Center, Minnesota (for respondent)

Carol Grant, Kurzman Grant Law Office, Minneapolis, Minnesota (for appellant)

Nancy G. Moehle, Guardian Ad Litem Program, Minneapolis, Minnesota (for guardian ad litem)

Considered and decided by Johnson, Presiding Judge; Kirk, Judge; and Toussaint, Judge.[*]

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**JOHNSON**, Judge

Boyd Jacob Phelps and Lynnea Diana Sterling are the parents of a girl who now is seven years old. The Hennepin County District Court awarded sole physical custody and sole legal custody of the girl to Phelps and awarded Sterling a limited amount of supervised parenting time. Sterling appeals. We affirm.

## FACTS

Phelps and Sterling began a romantic relationship in 2006. Sterling gave birth to a girl in November 2008. Phelps and Sterling lived together and shared parenting responsibilities for approximately two years until they separated. In 2010, Sterling moved to Arizona for six months to pursue an employment opportunity, and Phelps assumed the daily responsibilities relating to the child. When Sterling returned in 2011, the parties agreed to a parenting-time schedule. But the agreement later fell apart.

In April 2013, Phelps petitioned for joint legal custody and sole physical custody. Sterling answered, requesting sole legal custody and sole physical custody. The case went to trial in January 2014. Phelps called four witnesses, including himself. The court-appointed custody evaluator testified that he recommended that the district court award sole legal and sole physical custody to Phelps, primarily because the child's relationship with her mother was emotionally unhealthy. The custody evaluator testified that he did not believe reports that Phelps had abused the child because he believed that Sterling had caused the child to make false reports of abuse. In his own testimony, Phelps denied abusing the child. A Ramsey County child-protection worker testified that she found no

evidence of maltreatment by Phelps. Sarah Cross, a licensed clinical social worker who specializes in children's play therapy, testified that she was concerned about the child's relationship with her mother, which she described as a "very symbiotic relationship." Cross testified that the child "will do anything to protect her mom and make sure that mom's happy," which presents a risk of psychological problems during the child's development.

Sterling called two witnesses, including herself. She first called her adoptive father, who described Phelps favorably but also testified that the child once had a bump on her head, which the child attributed to Phelps. Sterling testified that she was entirely responsible for the child's care until she turned two years old, that Phelps had abused the child, and that when she left the child with Phelps to take a job in Arizona, the child "regressed" by no longer being able to count beyond ten or to use the bathroom.

The guardian *ad litem* testified that she agreed with the custody evaluator's recommendations. She testified that she did not credit the reports of abuse, in part because "none of the professionals in this case have corroborated that." She also expressed concern about the child's "psychological safety" when in her mother's care and the need for the child to "have the freedom to develop a healthy relationship with her father." She recommended supervised parenting time for Sterling, expressing the hope that it would not be a "long-term solution."

The district court issued its findings of fact, conclusions of law, and order in April 2014. The district court awarded sole physical custody and sole legal custody to Phelps. In analyzing the best-interests factors, the district court found that eight of the factors

3

were neutral, four of the factors favored Phelps, and one factor favored Sterling. The district court also ordered that Sterling have supervised parenting time once per week for as many as three hours. The district court also ordered that the guardian *ad litem* "shall determine when and how to transition [Sterling's] parenting time from supervised to unsupervised." Sterling moved for amended findings and a new trial. The district court denied the motion except for correcting a clerical error. Sterling appeals.

## D E C I S I O N

### I. Custody

Sterling first argues that the district court erred by awarding sole legal custody and sole physical custody to Phelps.

A district court's custody award must be determined by the child's best interests. Minn. Stat. § 518.17, subd. 1 (2014). When making a custody determination, a district court must consider "all relevant factors," including 13 statutory factors relevant to a child's best interests:

> (1)    the wishes of the child's parent or parents as to custody;
>
> (2)    the reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;
>
> (3)    the child's primary caretaker;
>
> (4)    the intimacy of the relationship between each parent and the child;
>
> (5)    the interaction and interrelationship of the child with a parent or parents, siblings, and any other person who may significantly affect the child's best interests;

4

(6)     the child's adjustment to home, school, and community;

(7)     the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(8)     the permanence, as a family unit, of the existing or proposed custodial home;

(9)     the mental and physical health of all individuals involved; except that a disability, as defined in section 363A.03, of a proposed custodian or the child shall not be determinative of the custody of the child, unless the proposed custodial arrangement is not in the best interest of the child;

(10)    the capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in the child's culture and religion or creed, if any;

(11)    the child's cultural background;

(12)    the effect on the child of the actions of an abuser, if related to domestic abuse, as defined in section 518B.01, that has occurred between the parents or between a parent and another individual, whether or not the individual alleged to have committed domestic abuse is or ever was a family or household member of the parent; and

(13)    except in cases in which a finding of domestic abuse as defined in section 518B.01 has been made, the disposition of each parent to encourage and permit frequent and continuing contact by the other parent with the child.

Minn. Stat. § 518.17, subd. 1(a) (2014).

In this case, Sterling challenges the district court's findings of fact with respect to the best-interest factors that the district court found to be either in favor of Phelps or neutral. We apply a clear-error standard of review to a district court's findings of fact

5

related to custody. *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000). We apply an abuse-of-discretion standard of review to a district court's ultimate decision with respect to custody. *Goldman v. Greenwood*, 748 N.W.2d 279, 281-82 (Minn. 2008). A district court abuses its discretion if its findings are not supported by the evidence or if it improperly applies the law. *Id.*

The district court found that the third factor is neutral because the parties shared child-care responsibilities before and after they separated. Sterling contends that the district court clearly erred on the ground that the evidence supports the finding that she was the primary caretaker because the child had lived with her most recently. The district court found that the child lived with both parents for the first two years of her life, lived solely with Phelps for six months beginning in November 2010, and lived primarily with Sterling upon her return to Minnesota in the spring of 2011 until shortly before the custody proceeding began but that Phelps had parenting time three or four nights each week during that period. The district court did not find credible Sterling's testimony that she provided all of the care during the child's first two years. The district court noted that the custody evaluator, whose report was deemed to be "very thorough and credible," believed that Sterling was "likely" the child's primary caretaker but that she attempted to minimize Phelps's role. Because the evidence in the record concerning this factor is in conflict and because some of the evidence favors Phelps, the district court did not clearly err by finding this factor to be neutral.

The district court found that the fourth factor favors Phelps because the custody evaluator, Cross, and the guardian *ad litem* expressed concerns about the child's

"psychological safety" while in Sterling's care and noted that the child was "clearly comfortable and engaged" in Phelps's care. Sterling contends that the district court clearly erred by relying on the testimony of Cross, the child's play therapist. Cross specializes in "play therapy," which is based in part on her interpretations of a child's statements and demeanor while playing with toys, which may provide insight into the child's emotional well-being. Sterling does not appear to challenge the admissibility of Cross's testimony; she challenges only the weight to be given the testimony. The district court did not adopt each aspect of Cross's testimony but, rather, relied generally on her testimony in finding that the child's relationship with her mother was unhealthy. Sterling also contends that the custody evaluator was "prejudicially tainted by Cross." To the extent that Sterling challenges the district court's credibility determinations, we must defer to the district court because "the district court is in the best position to judge the credibility of the witnesses and make determinations in the face of conflicting testimony and must be given due deference." *Braith v. Fischer*, 632 N.W.2d 716, 724 (Minn. App. 2001), *review denied* (Minn. Oct. 24, 2001). Because the district court's finding is based on evidence in the evidentiary record, the district court did not clearly err by finding that this factor favors Phelps.

The district court found that the sixth factor is neutral because either parent could maintain the child's adjustment to home, school, and community. Sterling contends that the district court clearly erred because the child "was involved in a variety of activities in [Sterling's] community" that would be disrupted. Phelps testified that the child continued taking piano lessons but that she had not continued to take swim lessons or

7

dance lessons for several months because she had been kicked out for "bad behavior." Accordingly, the record shows that awarding custody to Phelps would cause minimal disruption to the child's activities. Because the evidence in the record concerning this factor is in conflict, with some of the evidence favoring Phelps, the district court did not clearly err by finding this factor to be neutral.

The district court found that the seventh factor is neutral because either parent could provide a stable home. Sterling contends that the district court clearly erred because the child had lived with her most recently. The district court found that both parents lived in homes with separate bedrooms for the child and that Phelps continued to live in the home where he and Sterling had raised the child as an infant. Because the evidence in the record concerning this factor is in conflict, with some of the evidence favoring Phelps, the district court did not clearly err by finding this factor to be neutral.

The district court found that the ninth factor favors Phelps because the key non-party witnesses agreed that the child's relationship with Sterling was unhealthy and placed the child's mental and emotional health at risk. Sterling contends that the district court clearly erred because Phelps has ADHD, depression, anger outbursts, a criminal record, prior marijuana use, and has used physical discipline. The district court made detailed findings on the mental-health history and substance-abuse history of both parties as well as the child. The evidentiary record shows that Phelps had not used marijuana for one year before trial, based in part on his having passed a drug test; that his criminal record preceded the birth of his daughter; and that he no longer spanked the child and regretted having done so. The evidentiary record also shows that Sterling failed a drug

8

test and that the child's relationship with her mother was emotionally difficult. The custody evaluator testified that the child's emotional relationship with her mother was likely to lead to more anxiety, confusion, and depression. He explained:

> My concern really becomes that [the child] may not be able to, quote, unquote, allow herself to show or exhibit love for her father without fearing that she's betraying her mother. And that goes against the natural instinct of the child; she wants to show love to both because she's experiencing love for both.

We give considerable deference to a district court's weighing of the evidence concerning the mental and physical health of the parents and children. *Meyer v. Meyer*, 375 N.W.2d 820, 826 (Minn. App. 1985), *review denied* (Minn. Dec. 30, 1985). Because the district court's finding is based on evidence in the evidentiary record, the district court did not clearly err by finding that this factor favors Phelps.

The district court found that the tenth factor favors Phelps because the child has an unhealthy relationship with Sterling. Sterling contends the district court clearly erred because Phelps has trouble controlling the child during her tantrums, has used physical discipline, and cuts the child's hair against her wishes. The district court noted Phelps's anger and frustration but also noted that the evidence was several years old and that Sterling's credibility was cast into doubt when she characterized them as "recent" outbursts. The district court noted that the child's derogatory comments about Phelps seemed "coached" and that Sterling has unrealistic expectations about the child's behavior and education. The record indicates that Sterling objected to cutting the child's hair based on a belief rooted in her Native American culture but that Phelps cut the

9

child's hair anyway. The district court relied on that evidence in finding that the eleventh factor, which concerns the child's cultural background, favored Sterling. Because the district court's finding is based on evidence in the evidentiary record, the district court did not clearly err by finding that this factor favors Phelps.

The district court found that the thirteenth factor is neutral because the reports of domestic abuse are not credible. Sterling contends the district court clearly erred because the record contains evidence that Phelps physically harmed the child. Sterling contends that Phelps dragged the child up a staircase by her forearm in November 2013 and that Phelps hit the child's head on one occasion in December 2013. Both Sterling and her adoptive father testified that the child told them that Phelps was responsible for her injuries. But the custody evaluator, a Ramsey County child-protection worker, and the guardian *ad litem* testified that they did not believe that Phelps had harmed the child and did not have reason to fear for the child's safety in his care. In addition, Cross expressed concern that the child's reports of abuse were "coached." The district court's finding that no abuse had occurred is primarily a matter of credibility, and we generally give broad deference to a district court's credibility determinations. *See Braith*, 632 N.W.2d at 724; *Vangsness*, 607 N.W.2d at 474. Because the evidence in the record concerning this factor is in conflict, with some of the evidence favoring Phelps, the district court did not clearly err by finding this factor to be neutral.

In sum, we conclude that the district court did not clearly err in its findings with respect to any of the factors that Sterling has challenged on appeal. Sterling does not argue in the alternative that the district court abused its discretion if its factual findings on

10

the 13 best-interests factors are not erroneous.  Thus, the district court did not err by awarding sole physical custody and sole legal custody to Phelps.

## II.  Parenting Time

Sterling also argues that the district court erred in its award of parenting time, which allows her only one three-hour visit per week and only with supervision.

After determining the physical custody of a child, "the court shall, upon the request of either parent, grant such parenting time on behalf of the child and a parent as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child."  Minn. Stat. § 518.175, subd. 1(a) (2014).  The issue of parenting time generally is "governed by the best interests of the child."  *In re Welfare of B.K.P.*, 662 N.W.2d 913, 916 (Minn. App. 2003); *see also Courey v. Courey*, 524 N.W.2d 469, 472 (Minn. App. 1994).  This court usually applies an abuse-of-discretion standard of review to a district court's decision concerning parenting time.  *See Manthei v. Manthei*, 268 N.W.2d 45, 45 (Minn. 1978); *Gregory v. Gregory*, 408 N.W.2d 695, 697 (Minn. App. 1987).

Sterling challenges the district court's award of parenting time in two ways.  First, she contends that the district court "applied the wrong legal standard" by applying the best-interest factors in section 518.17, subdivision 1(a), but *not* applying the criterion in section 518.175, subdivision 1(b).  The latter statute provides, "If the court finds, after a hearing, that parenting time with a parent is likely to endanger the child's physical or emotional health or impair the child's emotional development, the court shall restrict parenting time with that parent as to time, place, duration, or supervision and may deny

11

parenting time entirely, as the circumstances warrant." Minn. Stat. § 518.175, subd. 1(b) (2014). Sterling contends not only that the latter statute applies but also that the district court erred by awarding a limited amount of supervised parenting time without making a finding of endangerment.

Sterling does not cite any caselaw to support her contention that a finding of endangerment pursuant to section 518.175, subdivision 1(b), is a prerequisite to an award of a relatively small amount of parenting time or supervised parenting time. If a district court were to find endangerment pursuant to section 518.175, subdivision 1(b), the district court plainly would have authority to restrict or deny parenting time. *See* Minn. Stat. § 518.175, subd. 1(b). But that does not appear to be the only legal basis for a limited award of parenting time. The language of section 518.175, subdivision 1(a), generally allows a district court to "grant such parenting time . . . as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child." Minn. Stat. § 518.175, subd. 1(a). Accordingly, the plain language of section 518.175, subdivision 1(a), allows a district court to fashion a limited award of parenting time even in the absence of endangerment. We note that if a parent seeks to modify a pre-existing award of parenting time, the district court "may not restrict parenting time unless it finds that . . . parenting time is likely to endanger the child's physical or emotional health or impair the child's emotional development." Minn. Stat. § 518.175, subd. 5(b)(1). But the parenting-time award in this case was ordered on a petition for an

initial award of parenting time. *See* Minn. Stat. § 518.156, subd. 1(2) (2014). Thus, we reject Sterling's contention that the district court applied the wrong statute.[1]

Second, Sterling contends that the district court erred by not applying the statutory rebuttable presumption that "a parent is entitled to receive at least 25 percent of the parenting time for the child." *See* Minn. Stat. § 518.175, subd. 1(g). This court has held that a district court must "demonstrate an awareness and application of the 25% presumption *when the issue is appropriately raised* and the court awards less than 25% parenting time." *Hagen v. Schirmers*, 783 N.W.2d 212, 217 (Minn. App. 2010) (emphasis added). Under *Hagen*, if a parent does not raise the issue or object in some manner to a parenting-time award that is below the 25-percent threshold, a district court does not commit reversible error by issuing such an award. *Id.* at 219 n.4 (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)). In this case, the district court did not acknowledge the 25-percent presumption and did not make a finding that the presumption had been rebutted. But Sterling did not raise the issue or object in any way and, thus, did not preserve the issue for appellate review.

---

[1]Even if the district court had been required to make a finding of endangerment, the absence of such a finding would be harmless error. The "failure to make findings of endangerment to support visitation restrictions is not necessarily grounds for reversal if the evidence in the record as a whole shows a parent's conduct endangers the child." *J.M.G. v. J.C.G.*, 431 N.W.2d 592, 595 (Minn. App. 1988); *see also Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). In this case, the district court found that the custody evaluator, the play therapist, and the guardian *ad litem* "shared the same concerns that the minor child is enmeshed in a symbiotic relationship with [Sterling], and believe the minor child cannot develop her own identity in the primary care of [Sterling]." The district court also noted that its custody decision is based, in part, on the fact that those witnesses "raised concerns that the child may develop mental health issues in the future based on this relationship." These statements are tantamount to a finding of endangerment.

Thus, the district court did not err in its award of parenting time.

### III. Management of Trial Time

Sterling last contends that the district court erred by limiting her presentation of evidence by enforcing a previously imposed allocation of time to each party for the presentation of evidence.

At the beginning of trial, the district court stated that it previously had informed counsel that two days had been set aside for the trial and that it would be necessary to set time limits on the presentation of evidence. The district court asked the guardian *ad litem* how much time she would need for the presentation of evidence; the guardian *ad litem* requested 60 minutes. The district court informed Phelps and Sterling that each of them would have 260 minutes for the presentation of evidence, including both direct examination and cross-examination. The district court stated, "Please understand that my staff will be keeping track of the time and at different times, we will advise you of where you are." There was no objection during this discussion.[2]

During the trial, the district court periodically apprised the parties of their time used and their time remaining. Phelps used approximately 165 minutes of his allotted time during his case-in-chief, thereby reserving approximately 95 minutes for cross-examination of other witnesses. Sterling's time expired during her case-in-chief, while she was on the witness stand. Sterling's counsel requested additional time. The district

---

[2]At oral argument, Phelps's attorney stated that the district court previously had sought input from counsel concerning the amount of time that they would need to present evidence and that the district court thereafter determined that two days would be appropriate. Such a discussion between the district court and counsel is not in the appellate record.

14

court did not need to rule on Sterling's request because the parties agreed that she could have an additional 10 minutes. Sterling introduced additional evidence until the district court indicated that her additional time had ended. Sterling did not ask for more time.

In general, "the district court has considerable discretion in scheduling matters and in furthering what it has identified as the interests of judicial administration and economy." *Rice Park Props. v. Robins, Kaplan, Miller & Ciresi*, 532 N.W.2d 556, 556 (Minn. 1995). More specifically, a district court has a duty to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Minn. R. Evid. 611(a). The rules of court in Minnesota do not speak directly to the issue of time limits at trial. The federal district courts are specifically authorized to "establish[] a reasonable limit on the time allowed to present evidence" at trial. Fed. R. Civ. P. 16(c)(O). The federal appellate courts also have held that a trial court may "impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." *Life Plus Int'l v. Brown*, 317 F.3d 799, 807 (8th Cir. 2003). Such time limits must serve these purposes and "should be sufficiently flexible to accommodate adjustment if it appears during trial that the court's initial assessment was too restrictive." *Id.* (quotation omitted). Accordingly, "it may be an abuse of the trial court's discretion to exclude probative, non-cumulative evidence simply because its introduction will cause delay." *Id.* (alteration and quotation omitted). But to preserve the issue for appellate review, "a

15

party must lodge a timely objection to the time limits and must make a proffer of evidence that was excluded for lack of sufficient time." *Id.*; *accord General Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1508 (9th Cir. 1995).[3]

Sterling contends that the district court erred by terminating her presentation of evidence based on the previously imposed time limit. But Sterling failed to preserve the issue for appellate review. A party wishing to challenge on appeal the exclusion of evidence at trial must make a timely objection and proffer during trial, Minn. R. Evid. 103(a), and raise the issue in a post-trial motion for a new trial, because "an issue first raised in a post-trial motion is not raised in a timely fashion." *Grigsby v. Grigsby*, 648 N.W.2d 716, 726 (Minn. App. 2002), *review denied* (Minn. Oct. 15, 2002); *see also Sauter v. Wasemiller*, 389 N.W.2d 200, 202 (Minn. 1986). Sterling did not object at the beginning of trial, did not object when her additional time expired, did not request more time after being given additional time, and did not make a proffer of what evidence she would present if she were given more time. Sterling raised the issue in a tardy manner by including it in her motion for new trial or for amended findings. Thus, Sterling failed to preserve the issue for our review. *See Thiele*, 425 N.W.2d at 582; *Life Plus Int'l*, 317 F.3d at 807.

---

[3]In her appellate brief, Sterling asserts that the district court's time limits are a matter of procedural due process, but she does not cite any caselaw that applies the Due Process Clause to a district court's enforcement of time limits on the presentation of evidence in a civil trial. We are not aware of any such caselaw. Accordingly, we apply the well-developed non-constitutional caselaw that is tailored to these particular circumstances. *See Life Plus Int'l*, 317 F.3d at 807; *General Signal Corp.*, 66 F.3d at 1508; *cf. Staeheli v. City of St. Paul*, 732 N.W.2d 298, 305 (Minn. App. 2007) (concluding that city council did not deprive property owner of procedural due process by setting and enforcing strict, arbitrary time limit in license-cancellation proceeding).

Even if we were to consider Sterling's argument, assuming that the above-discussed federal caselaw applies, her argument would fail. She asserts that she was unable to call "more than a single witness," but that assertion is incorrect. She called two witnesses: her adoptive father and herself. Her inability to introduce more evidence is due to her attorney's decisions to use most of her allotted time on Phelps's witnesses and to call a peripheral witness before calling Sterling to the witness stand. In fact, Sterling's attorney appears to have spent more time on his cross-examinations of Phelps's witnesses than Phelps's attorney spent on her direct examinations of those witnesses (assuming that the number of pages of trial transcript is a reasonably accurate indication of time). It also appears that, throughout the trial, Sterling used more time than Phelps used. Sterling's attorney's examinations of all witnesses comprises approximately 244 pages of the trial transcript, compared to approximately 169 pages for Phelps's attorney's examinations. On the whole, it appears that the district court's imposition and enforcement of time limits did not favor Phelps over Sterling. And nothing in the record suggests that the district court's initial allocation of time "was too restrictive," that the time limits were not "sufficiently flexible to accommodate adjustment," or that the district court "exclude[d] probative, non-cumulative evidence" because of the previously established time limits. *See Life Plus Int'l*, 317 F.3d at 807 (quotation omitted).

Thus, the district court did not err by limiting Sterling's time for the presentation of evidence.

**Affirmed.**

17